**John MADDEN, et al., Individually and as Members of a Certified Class, Appellants–Plaintiffs,**

v.

**INDIANA DEPARTMENT OF TRANSPORTATION, et al., Appellees–Defendants.**

No. 64A03–0404–CV–203.

Court of Appeals of Indiana.

Aug. 19, 2005.

Kenneth J. Allen, Tracey S. Wetzstein, Michael T. Terwilliger, Kenneth J. Allen & Associates, P.C., Valparaiso, for Appellants.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, for Appellees.

## OPINION

MAY, Judge.

John Madden, on behalf of himself and the other passengers injured when a commuter train collided with a semi-tractor

trailer, appeals the trial court's grant of summary judgment to the Indiana Department of Transportation ("INDOT"). Madden raises one issue, which we restate as whether INDOT designated sufficient evidence to demonstrate it was entitled to discretionary function immunity.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The Midwest Steel Division of National Steel Corporation and the Pre–Coat Metals Division of Sequa Corporation have industrial facilities in Portage, Indiana. The facilities are situated to the north of U.S. Highway 12 ("U.S. 12") and are accessible from U.S. 12 primarily by Midwest Steel Road, which runs perpendicular to U.S. 12 from the highway to the industrial facilities.

Just north of U.S. 12, two sets of railroad tracks owned by the Northern Indiana Commuter Transportation District ("NICTD") intersect Midwest Steel Road. Fifty-eight feet north of those tracks is a second double set of tracks crossing Midwest Steel Road. Conrail owns those tracks.

At the intersection of Midwest Steel Road and U.S. 12 is a traffic control light. INDOT designed, installed and maintains this light. The light was linked with the train signals, such that when the system detected an approaching train it would preempt the typical traffic light pattern and replace it with a lighting sequence that ensured all southbound traffic from the industrial facilities could reach U.S. 12 before the train arrived. However, the traffic lights did not prevent traffic from turning northbound onto Midwest Steel Road when a train was approaching and did not permit northbound traffic already on Mid-

west Steel Road to cross all the tracks before a train's arrival.

On June 18, 1998, Keith Lintz was driving his semi-tractor and pulling dual tandem-trailers [1] carrying steel coils. The length of his rig was eighty-two feet. Lintz was traveling eastbound on U.S. 12 and turned north onto Midwest Steel Road pursuant to a green left turn arrow. Once he was on Midwest Steel Road, lowered train gates at the Conrail tracks prevented Lintz from reaching the industrial facilities. Because his rig was longer than the space between the Conrail tracks and the NICTD tracks, his trailer sat across the NICTD tracks. While Lintz was trapped on Midwest Steel Road, a westbound commuter train approached on the NICTD tracks and struck Lintz's trailer.

The National Transportation Safety Board (NTSB) report of the accident indicated:

> If the highway traffic signal preemption had been designed to account for both directions of traffic on Midwest Steel Road, the highway traffic signals would have flushed out any traffic stopped on the crossings ... and would not have displayed a green light for traffic approaching the facility. This design feature would have prevented traffic from beginning to cross the two sets of tracks and then being stopped before safely clearing them.

(Appellant's App. at 171; NTSB Report at 53.)

On October 29, 1999, Madden filed a negligence action against INDOT and a number of other entities. On June 16, 2003, INDOT filed a motion for summary judgment, and Madden responded. The court held a hearing and then entered

---

**1.** Such a set-up is also referred to as a "long-combination vehicle" or a "Michigan train."

(Appellant's App. at 148.)

summary judgment for INDOT in an order that provided:

> On the Motion for Summary Judgment filed on behalf of the Indiana Department of Transportation (INDOT) the Court concludes as a matter of law that the immunity provided by Indiana Code 34–13–3–3 applies to INDOT in this situation and therefore INDOT is entitled to judgment as a matter of law. The Court orders judgment entered in favor of Defendant INDOT and against the Class Plaintiffs.

(Appellant's App. at 55.) After Madden settled with the remaining defendants, the court ordered final summary judgment on behalf of INDOT.

## DISCUSSION AND DECISION

A trial court is to grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party initially has the burden to prove the absence of genuine issues and the entitlement to judgment. *PNC Bank v. State*, 750 N.E.2d 444, 446 (Ind.Ct.App.2001), *trans. denied* 761 N.E.2d 421 (Ind.2001). Then, the non-moving party may not rest on the pleadings, but rather must respond by designating evidence to demonstrate a genuine issue of material fact. *Id.* When filing a motion or response, a party must "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies." *Id.* (citing T.R. 56(C)).

When we review the trial court's grant of summary judgment, we apply the same standard the trial court applied. *Id.* We may not weigh the evidence, and we must consider the facts in the light most favorable to the non-moving party. *Id.* We may sustain a trial court's grant of summary judgment on any theory supported by the evidence. *Id.*

INDOT claims it is entitled to "discretionary function immunity" under the Indiana Tort Claims Act. A governmental entity may "be liable for torts committed by its agencies and its employees." *Peavler v. Bd. of Comm'rs of Monroe County*, 528 N.E.2d 40, 42 (Ind.1988). However, the Act provides exceptions to that liability, one of which is that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he performance of a discretionary function." Ind.Code § 34–13–3–3(7).

Because the Tort Claims Act is in derogation of the common law, we must construe it narrowly and decline to find immunity if possible. *Lee v. State*, 682 N.E.2d 576, 578 (Ind.Ct.App.1997), *trans. denied sub nom. Lee v. State Dept. of Transp.*, 698 N.E.2d 1183 (Ind.1998). The party seeking immunity, here INDOT, "bears the burden of proving that its conduct falls within the Act, and thus is shielded from liability." *Id.* Whether INDOT is immune from liability because it was performing a discretionary function is a question of law. *PNC Bank*, 750 N.E.2d at 446. We review questions of law *de novo*, such that we give no deference to the trial court's determination of the issue. *Tankersley v. Parkview Hosp., Inc.*, 791 N.E.2d 201, 204 (Ind.2003), *reh'g denied.*

Our supreme court has determined the test for discretionary function immunity should be a "planning-operational test." *Peavler*, 528 N.E.2d at 46. Under that test, "a governmental entity will not be held liable for negligence arising from decisions which are made at a planning level, as opposed to an operational level." *Lee*, 682 N.E.2d at 578. We have described the test as follows:

> Under the [planning-operational] test, if the decision of the governmental entity was a 'planning' activity, that is a func-

tion involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and immune under I.C. 34–4–16.5–3[7]. Government decisions about policy formation which involve assessment of competing priorities, a weighing of budgetary considerations, or the allocation of scarce resources are also planning activities. On the other hand, if the function is 'operational', for example decisions regarding only the execution or implementation of already formulated policy, the function is not discretionary under the statute and no immunity attaches.

*Id.* (quoting *Voit v. Allen County,* 634 N.E.2d 767, 769–70 (Ind.Ct.App.1994), *reh'g dismissed, trans. denied* ).

■ The alleged negligence by INDOT in this case is the failure to set the traffic signals to keep northbound Midwest Steel Road clear when a train was approaching. When the allegation of negligence involves an omission of action, the government may demonstrate the conscious balancing required for immunity by presenting evidence "showing that a governmental entity considered improvements of the general type alleged in plaintiff's complaint."[2] *Id.* (quoting *Voit,* 634 N.E.2d at 770). Accordingly, to take advantage of discretionary function immunity in this case, INDOT had a burden to demonstrate it had considered setting the traffic signals to account for northbound traffic. *See id.* (a government entity "bears the burden to show that a policy decision,

consciously balancing risks and benefits, took place").

Madden asserts:

INDOT failed to provide *any* documentation establishing that it considered retiming the traffic light preemption sequence at U.S. 12 and Midwest Steel Road. In fact, INDOT failed to establish that a "duly organized meeting" took place at which the issue was even considered.

(Br. of Appellants at 19) (emphasis in original).

■ In response, INDOT claims it could not present evidence proving it had made a considered policy decision because the necessary evidence is privileged under federal law. 23 U.S.C. § 409 provides:

Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossing, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in

---

2. As our supreme court explained:

Tort standards of reasonableness do not provide an adequate basis for evaluating the failure to erect a warning sign if that failure arises from an actual, affirmative policy decision. If the decision is based on professional judgment, however, rather than policy oriented decision-making, traditional tort standards for professional negli-

gence afford a basis for evaluation. Thus, a county's considered decision to entrust placement of traffic control devices to a traffic engineer is not reviewable under tort standards, while the engineer's subsequent decisions as to warning signs are reviewable under tort standards of professional negligence.

*Peavler,* 528 N.E.2d at 47.

such reports, surveys, schedules, lists, or data.

Congress created that privilege "to foster the free flow of safety-related information between the railroad industry and its regulatory bodies by precluding the possibility that such information would be discoverable and admissible in civil suits." *Sawyer v. Illinois Central Gulf Railroad Co.*, 606 So.2d 1069, 1074 (Miss.1992) (quoting *Bearden v. Southern Railway Co.*, No. CV88–PT–0005–S (N.D.Ala. July 11, 1988)).

■ Nevertheless, legislatures create evidentiary privileges to shield selected information from discovery, and those shields may not be wielded as swords at the will of a party. *See, e.g., Brown v. State*, 525 N.E.2d 294, 296 (Ind.1988) ("The privilege against self-incrimination was designed as a shield and not as a sword."); *Allendorf v. Sully Transport, Inc.*, 2001 WL 864265 (N.D.Ill.2001) ("Allowing a Plaintiff to use a confidentiality privilege as both a sword and a shield would 'simply be contrary to the most basic sense of fairness and justice.'"). Courts have long held a party may not place an issue before the trier of fact and then assert a privilege to prohibit the introduction of evidence regarding that issue. *See, e.g., Watson v. State*, 784 N.E.2d 515, 520 (Ind.Ct.App.2003) ("when a patient places her mental or physical condition at issue in a lawsuit, she has impliedly waived the physician-patient privilege to that extent") (citing *Collins v. Bair*, 256 Ind. 230, 268 N.E.2d 95, 101 (1971)). *See*

*also Washburn v. Brown*, 1985 WL 1004 (N.D.Ill.1985) ("Where a party directly puts a charge in issue, it cannot then cloak itself behind a privilege.") (citing *Nat. Utility Serv., Inc. v. Northwestern Steel & Wire Co.*, 426 F.2d 222, 227 (7th Cir.1970)).

Assuming *arguendo* the reports and findings generated during INDOT's conversations with railroad and federal officials during the studies of Midwest Steel Road's crossings of the Conrail and NICTD tracks are protected by Section 409, INDOT may not assert the discretionary function immunity defense and then hide behind the Section 409 privilege. INDOT had the burden to produce evidence it was entitled to the immunity it asserts. We may not permit INDOT to use a privilege found in federal law to relieve INDOT of its burden of proof.[3] Such a result would be "unacceptable because it would allow the privilege holder to thwart the truth-seeking process by using the privilege as both a shield and a sword." *Adams v. Ardcor*, 196 F.R.D. 339, 343 (E.D.Wis.2000).

■ Nor may we find discretionary function immunity based solely on testimony by a representative of the governmental entity that meetings were held, without written documentation of the meetings. *Hanson v. Vigo County Board of Comm'rs*, 659 N.E.2d 1123, 1125 (Ind.Ct. App.1996). "[B]oards and commissions speak or act officially only through the minutes and records made at duly organized meetings." *Scott v. City of Sey-*

---

**3.** Nor are we persuaded by INDOT's invitation that we infer it engaged in the required policy-based decision-making that leads to discretionary function immunity because "INDOT would not have had to assert the privilege had there not been the type of planning, evaluating, and other discretionary activities that the federal law intends to protect." (Appellee's Br. at 9–10.) Were we to grant immunity on that basis, all the State would have

to do to be entitled to discretionary function immunity is simply claim all its documents are protected by the Section 409 privilege—even if no such documents existed and no discussions ever occurred. We decline INDOT's invitation to relieve it of its burden to prove it did in fact engage in policy based decision making of the kind that gives rise to discretionary function immunity.

*mour,* 659 N.E.2d 585, 588 (Ind.Ct.App. 1995). The public policy decisions that are entitled to discretionary function immunity must have been made by the governmental entity in its official capacity. *Id.* Unless the government entity submits minutes of meetings, a trial court cannot conclude the entity is entitled to immunity based on the exercise of its official judgment. *See id.* (holding city presented insufficient evidence of board action to be entitled to discretionary function immunity).

■■■ INDOT claims "the trial court could reasonably infer that, in the course of meeting with railroad and federal officials, INDOT necessarily had to balance the risks and benefits involved in maintaining the same safety operation at this intersection." (Br. of Appellee at 13.) While the trial court could infer INDOT discussed these crossings with railroad and federal officials, we are not privy to *who* at INDOT had those discussions or *what* those discussions involved. "The critical inquiry is 'not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations.'" *Peavler,* 528 N.E.2d at 45 (quoting *Blessing v. United States,* 447 F.Supp. 1160, 1178 (E.D.Pa.1978)). To be entitled to discretionary function immunity, INDOT must have engaged in "the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices." *Lee,* 682 N.E.2d at 578.

Our supreme court explained in *Peavler* "a county's considered decision to entrust placement of traffic control devices to a traffic engineer is not reviewable under tort standards, while the engineer's subsequent decisions as to warning signs are reviewable under tort standards of professional negligence." 528 N.E.2d at 47. Accordingly, if, for example, the INDOT representative who met with the federal and railroad officials to decide whether to make improvements to the crossing signal system was a field engineer, and INDOT had no other involvement that amounted to a considered discussion of policy, then INDOT would not be entitled to discretionary function immunity.

INDOT failed to designate any evidence to demonstrate its failure to alter the crossing signals and traffic lights at Midwest Steel Road and U.S. 12 was a "a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices" entitled to discretionary function immunity. *Lee,* 682 N.E.2d at 578. Therefore, we must reverse the summary judgment and remand for further proceedings consistent with this opinion.[4]

Reversed and remanded.

DARDEN, J., and BARNES, J., concur.

---

4. To avoid any confusion on remand, we explicitly note we have decided *only* the issue of INDOT's entitlement to discretionary function immunity. As our supreme court has noted:
    Immunity assumes negligence but denies liability. Thus, the issues of duty, breach and causation are not before the court in deciding whether the government entity is immune. If the court finds the government is not immune, the case may yet be decided on the basis of failure of any element of negligence. This should not be confused with the threshold determination of immunity.
*Peavler,* 528 N.E.2d at 46–47.