**CITY OF INDIANAPOLIS,**
**Appellant–Defendant,**

**v.**

**Olive DUFFITT, Appellee–Plaintiff.**

No. 49A04–0911–CV–661.

Court of Appeals of Indiana.

June 29, 2010.

Jonathan L. Mayes, Chief Litigation Counsel, Beth A. Dale, Assistant Corporation Counsel, Office of Corporation Counsel, Indianapolis, IN, Attorneys for Appellant City of Indianapolis.

Carl A. Markovich, Richards, Boje, Pickering, Benner & Becker, Noblesville, IN, Attorney for Appellee.

Bryan H. Babb, Stephen C. Unger, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Amici Curiae Indiana Association of Cities and Towns and Indiana Municipal Lawyers Association.

## OPINION

BRADFORD, Judge.

In this interlocutory appeal, Appellant–Defendant the City of Indianapolis challenges the trial court's denial of its motion for summary judgment in Appellee–Plaintiff Olive Duffitt's tort action against the City for damages arising out of certain injuries sustained from her fall on the sidewalk. Upon appeal, the City claims that Duffitt's tort claim is barred on discretionary function immunity grounds under the Indiana Tort Claims Act (ITCA).[1] We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On approximately August 14, 2006, the City received a complaint about the condition of a sidewalk at 1310 East Minnesota Street in Indianapolis. That day, the City filed a service request for the sidewalk. On August 15 or 16, 2006, the City inspected the sidewalk, determined it was a "tripping hazard," and allegedly issued a work order for its repair with a "Priority 1" rating. Appellant's App. pp. 118, 183. The City's priority rating system uses a scale of 1 to 3 to distinguish between side-

walks that are "severely defected" ("Priority 1") and those that are "slightly damaged" ("Priority 3"). Appellant's App. p. 44.

As of October 20, 2007, the sidewalk at 1310 East Minnesota had not been repaired. On that date, Duffitt allegedly tripped and fell on the sidewalk and sustained physical injuries.

On October 30, 2008, Duffitt filed a complaint for damages alleging that the City was negligent in failing to repair the sidewalk, causing her fall and resulting injuries. On June 30, 2009, the City filed a motion for summary judgment, claiming that it was entitled to discretionary function immunity. In support of its motion, the City designated evidence, including an affidavit from Jim Little, Operations Manager for the City's Department of Public Works ("DPW") since September 2008. In his affidavit, Little averred the following facts, summarized below:

- the City had limited funds to repair sidewalks;
- the City's limited budget and manpower made it nearly impossible to fix all sidewalks, resulting in the City's decision to institute a policy prioritizing sidewalk repair and renovation;
- that the DPW's priority rating system for measuring sidewalk deterioration used a scale of 1 to 3 to distinguish between "severely defected" and "slightly damaged" sidewalks;
- that sidewalks with the same priority rating were typically repaired in the order in which they were entered into the DPW system;
- that sidewalk repair priority was also based upon the Operations Manager's or District Managers' cost-benefit

[1]. Ind.Code § 34–13–3–3 (2008).

analysis, budgetary concerns and consideration for competing DPW projects;

- that the decision to empower the Operations Manager with the discretion to prioritize sidewalk repair was a conscious policy decision by the City;
- that the City's sidewalk repair policy was as follows: once the Mayor's Action Center received calls from City residents, it generated work orders to DPW to investigate the complaint, after which a DPW inspector went to the location, assessed the situation, and assigned the sidewalk a priority rating;
- that, following an August 14, 2006 report, a DPW employee inspected the sidewalk at issue and gave it a "Priority 1" rating;
- that on the date of the inspection, the City had ninety-three sidewalks with a Priority 1 rating;
- and that as of that same date, the City had approximately 357 open "Priority 1" projects.

Appellant's Appendix pp. 43–45. The City also designated as evidence a public record of its Infrastructure Advisory Commission's May 26, 2009 meeting assessing the City's apparent budgetary constraints.

Duffitt filed a July 29, 2009 response in which she designated evidence including, *inter alia*, documentation of a rating system from the City's website which reflected what she argued was a different priority rating system than the one the City's designated evidence indicated it used. This rating system was referred to as the Present Serviceability Rating (PSR) and rated projects from 0 to 5, with "0" serving as the designation for "totally de-teriorated sidewalks" and "5" designating "brand new sidewalks." Appellant's App. p. 155. Duffitt argued that this different rating system was demonstrably in use during the relevant time period, specifically August 14, 2006, to October 20, 2007.

On August 17, 2009, the City filed a supplemental designation of evidence including an affidavit from Ronnie Rhoton, City DPW District 3 Operations Manager[2] in 2006 and 2007, stating that the priority rating system described by Little was in effect in 2006 and 2007. The City designated an additional affidavit by Assistant DPW Administrator Sherry Powell averring that the PSR rating described in the City's website was used exclusively by the DPW's Engineering Division, which received projects only after they were subject to the "1–3" priority system originally described by the City. The City additionally designated evidence of DPW's budget.

The trial court held a hearing on the City's summary judgment motion and on September 21, 2009, denied the motion.

On October 16, 2009, the City moved to certify the trial court's denial of its motion for summary judgment, which the trial court granted on October 20, 2009. Following Duffitt's motion to reconsider and objection to the City's motion, which the trial court denied, the City filed a motion with this court to accept interlocutory appeal on November 19, 2009. On December 22, 2009, this court granted the motion and accepted jurisdiction. This appeal follows.

**DISCUSSION AND DECISION**

Upon appeal, the City contends that the trial court erred in denying its motion for summary judgment. According to the City, the "discretionary function" provision

---

**2.** Rhoton further averred that the sidewalk at 1310 East Minnesota Street lies within District 3.

of the Indiana Tort Claims Act provides immunity from Duffitt's claim.

## I. Discretionary Immunity

Our standard of review is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001) (citing Ind. Trial Rule 56(C)). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* at 973–74. We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.* at 974.

The Indiana Tort Claims Act (ITCA) protects governments from liability in certain circumstances. *Peavler v. Bd. of Comm'rs of Monroe County*, 528 N.E.2d 40, 42 (Ind.1988). One such circumstance involves a governmental entity's or employee's performance of a discretionary function. *See id.* Specifically, "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he performance of a discretionary function." *See* Ind.Code § 34–13–3–3(7) (2008). The issue of whether an act is discretionary and therefore immune is a question of law for the court's determination. *Peavler*, 528 N.E.2d at 46. The question may require an extended factual development, but the essential inquiry is whether the challenged act is the type of function which the legislature intended to protect with immunity. *Id.* This determination should be made by the court. *Id.*

Discretionary immunity must be narrowly construed because it is an exception to the general rule of liability. *Id.* The governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by consciously balancing risks and benefits. *Id.*

The Indiana Supreme Court has adopted the "planning-operational test" for determining whether a function is discretionary for purposes of the ITCA. *City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1206 (Ind.Ct.App.2008) (citing *Peavler*, 528 N.E.2d at 46), *trans. denied.* The standard for this test " 'dictates that a governmental entity will not be held liable for negligence arising from decisions which are made at a planning level, as opposed to an operational level.' " *Id.* (quoting *City of Crown Point v. Rutherford*, 640 N.E.2d 750, 752 (Ind.Ct.App.1994)). This court has previously explained the test in the following way:

> [I]f the decision of the governmental entity was a "planning" activity, that is a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and immune under [Ind.Code § 34–13–3–3(7) ]. Government decisions about policy formation which involve assessment of competing priorities, a weighing of budgetary considerations, or the allocation of scarce resources are also planning activities. On the other hand, if the function is "operational," for example decisions regarding only the execution or implementation of already formulated policy, the function is not discretionary under the statute and no immunity attaches.

*Id.* at 1206–07 (quoting *Voit v. Allen County,* 634 N.E.2d 767, 769–70 (Ind.Ct.App. 1994) (internal citations omitted)).

In *Pairsh,* this court used the above test to conclude that summary judgment on discretionary immunity grounds was proper, blocking the plaintiff's personal injury claim alleging negligent sidewalk repair against the defendant-city. *Id.* at 1208. In finding discretionary immunity, the *Pairsh* court relied upon an unrebutted affidavit from the city's Transportation Infrastructure Manager averring that the failure to repair the sidewalk was based upon his weighing of alternatives, assessing competing priorities, weighing budgetary considerations, and allocating scarce resources. *Id.* In the *Pairsh* court's view, these considerations were all "planning activities" under the "planning-operational" test, suggesting that the defendant was immune. *Id.* Because the plaintiff in *Pairsh* pointed to no contradictory evidence, the *Pairsh* court concluded that there was no genuine issue of material fact regarding discretionary function immunity. *Id.*

In reaching this decision the *Pairsh* court relied heavily upon certain distinctions between *Rutherford* and *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1119 (Ind.Ct.App.1995), *trans. denied.* Both of these cases involved personal injury actions brought against municipalities for their allegedly defective sidewalks. In *Rutherford,* the defendant-municipality's decision not to renovate a sidewalk was based upon a comprehensive sidewalk renovation scheme involving the contemplation and balancing of public policy factors and the weighing of budgetary considerations in the allocation of resources. *Id.* at 754. Because the failure to repair the sidewalk was due to these policy-based judgments, the *Rutherford* court concluded that the City's sidewalk maintenance deci-

sions were discretionary and immune from tort liability. *Id.* at 755.

In *Zerkel,* in contrast, the municipality at issue did not demonstrate that it had an ordinance or other kind of systematic process by which it had implemented its sidewalk-replacement program, which simply involved inspecting and removing damaged sidewalk at a homeowner's request and leaving the cost of sidewalk replacement to the homeowner. 659 N.E.2d at 1119. Indeed, any action relating to sidewalk repair or replacement was incumbent upon the homeowner alone; the municipality made no preliminary inspections or decided which sidewalks needed repair. *Id.* In the absence of evidence of board deliberation, professional judgment, weighing of budgetary considerations, or risk assessment, the *Zerkel* court concluded that the sidewalk-replacement program was not the product of a systematic process involving the conscious balancing of risks and benefits. *Id.* Accordingly, the municipality was not entitled to discretionary function immunity. *Id.*

## A. City Decisions

Here, the City's designated evidence demonstrates that there were limited funds for sidewalk repair by the City, that many projects competed for these funds, and that as a result of such limited funds, the City implemented a policy prioritizing sidewalk repair and renovation. Under this policy, sidewalks with the same priority were generally repaired in the order in which they were entered into the system. Sometimes, however, the DPW Operations or District Managers further prioritized or de-prioritized sidewalk repairs by conducting a cost-benefit analysis with due consideration for budgetary concerns and competing projects. The delegation of this prioritization task to operations managers was similarly based upon a conscious policy decision. Apart from des-

ignating evidence of the existence of a different prioritization plan, which, as the Engineering Division's sub-plan, does not contradict the City's evidence, Duffitt points to no evidence suggesting that the City's broad prioritization scheme is *not* the product of budgetary and cost-benefit policy decisions. Given the budgetary considerations and cost-benefit analyses which produced the City's prioritization scheme, the City's designated evidence demonstrates that its decisions are discretionary under the "planning-operational" test as it is interpreted in *Pairsh* and *Rutherford.*

### B. City Manager Decisions

▬▬▬▬ Duffitt argues that the City's delegation of certain prioritization decisions to its managers demonstrates that its decisions are more a matter of professional judgment than a discretionary policy decision. Under *Peavler*, decisions based upon professional judgment rather than policy are not entitled to discretionary immunity:

> Tort standards of reasonableness do not provide an adequate basis for evaluating the failure to erect a warning sign if that failure arises from an actual, affirmative policy decision. If the decision is based on professional judgment, however, rather than policy oriented decision-making, traditional tort standards for professional negligence afford a basis for evaluation. Thus, a county's considered decision to entrust placement of traffic control devices to a traffic engineer is not reviewable under tort standards, while the engineer's subsequent decisions as to warning signs are reviewable under tort standards of professional negligence.

*Peavler*, 528 N.E.2d at 47.

In *Greathouse v. Armstrong*, 616 N.E.2d 364, 366–67 (Ind.1993), the Indiana Supreme Court, applying *Peavler*, further explained this distinction. Decisions involving the formulation of basic policy are entitled to immunity, but decisions regarding only the execution or implementation of that policy are not entitled to immunity, with the critical inquiry being whether the nature of the judgment calls for policy considerations. *Greathouse*, 616 N.E.2d at 366–67.

At issue in *Greathouse* was whether the defendant-Sheriff's Department was immune from tort liability for certain decisions made by its dispatcher. *Id.* at 365. The plaintiff in *Greathouse* had been involved in a fatal motorcycle accident after hitting a bull. *Id.* at 366. Prior to the accident, the Sheriffs Department's dispatcher had been informed that there were loose cattle on the road, and he was attempting to locate their owner. *Id.* The Sheriff's Department contended that it was immune from liability for its dispatcher's actions because the dispatcher, in responding to complaints, was required to prioritize competing demands and consider the availability of scarce resources. *Id.* at 367. In rejecting this argument, the *Greathouse* court observed that the dispatcher's exercise of professional judgment was merely to implement the department's pre-determined policy for cases involving loose livestock, that it did not involve deliberative formulation of basic policy or a conscious risk-benefit analysis. *Id.* Significantly, the *Greathouse* court, in assessing the merits of this argument, considered the nature of the judgment at issue, not whether it was made by a single government delegate or employee. *Id.* Indeed, in reaching its decision, the *Greathouse* court acknowledged the possibility that a single government employee could engage in policy formation, thereby immunizing his conduct from judicial review. *Id.* at 367 ("When the conduct of the government employee in implementing department regulations requires only performance of

pre-determined procedures, *and not the formulation of policy*, such conduct is not immunized from judicial review as a 'discretionary function.'" (emphasis supplied)).

Here, if the City's delegation of decisions to its managers had simply permitted the managers to make decisions within the context of a pre-determined policy, these decisions likely would not be entitled to discretionary immunity. But the designated evidence demonstrates that the decisions delegated to the City's managers were similarly based upon cost-benefit analyses and budgetary considerations, demonstrating that they too were policy decisions in nature. This is so regardless of the fact that these decisions were delegated to single employees. *See Greathouse*, 616 N.E.2d at 367. Accordingly, we reject Duffitt's contention that the mere fact of delegation by the City demonstrates that the decisions are non-discretionary. *Id.*; see Ind.Code § 34–13–3–3(7) (providing immunity for governmental entities *or employees* performing a discretionary function (emphasis supplied)); *But see Scott v. City of Seymour*, 659 N.E.2d 585, 590–91 (Ind.Ct.App.1995) (stating, "Discretionary immunity ... was not intended to protect a policy decision made by one Board member[ ]" and concluding that decision by single city official, outside a city meeting, was inadequate to show systematic policy decision necessary to establish discretionary immunity).

## II. Admissibility of Designated Evidence

### A. Little's Affidavit

 Duffitt argues that the above analysis relies largely upon Little's affidavit, which she claims contains multiple inadmissible statements. Affidavits in support of or in opposition to a motion for summary judgment are governed by Indiana Trial Rule 56(E), which provides,

in relevant part, as follows: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." " 'Mere assertions in an affidavit of conclusions of law or opinions will not suffice.' " *Dedelow v. Rudd Equip. Corp.*, 469 N.E.2d 1206, 1209 (Ind.Ct.App. 1984), *quoted in City of Gary v. McCrady*, 851 N.E.2d 359, 364 (Ind.Ct.App.2006). The requirements of Trial Rule 56(E) are mandatory; hence, a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits. *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct.App.2005). Further, the party offering the affidavit into evidence bears the burden of establishing its admissibility. *Duncan v. Duncan*, 764 N.E.2d 763, 766 (Ind. Ct.App.2002), *trans. denied.*

 Duffitt claims that Little is not competent to aver to certain statements in his affidavit and that these statements were not based upon personal knowledge. In making this claim, Duffitt points to the fact, as admitted by Little, that he has been DPW Operations Manager since September 2008 and did not occupy this position during the August 2006–October 2007 time period in question. In Duffitt's view, Little is therefore unqualified to make accurate representations about DPW procedures and policies as they existed at the relevant times. We are unpersuaded that Little necessarily lacked personal knowledge about DPW policies at the time in question simply because he became DPW Operations Manager after that time. To the contrary, it is fully plausible that Little, a 28–year City employee and DPW manager since 2008, would have been personally knowledgeable about existing City policies and their history, regardless of

whether his manager status coincided with the time period in question. Of course, Little's affidavit is not crucial to the City's case because the City introduced a similar affidavit from Rhoton, 2006–2007 DPW Operations Manager, who averred that the prioritization scheme described by Little, based upon the same cost-benefit analyses and budgetary concerns, was in effect during those years as well.

To the extent Duffitt challenges Little's personal knowledge about the City's budgetary constraints, we similarly conclude that Little's employment status with the City provided the necessary basis for him to have personal knowledge about its ongoing finances. Of course, even if Little's statements were not considered, Rhoton also averred that the City had limited sidewalk repair funds. Duffitt does not challenge Rhoton's affidavit.

To the extent Duffitt challenges Little's personal knowledge about her 2006 sidewalk report or the City's inspection of her complaint and assignment of a "Priority 1" rating, Duffitt concedes the existence of these very facts in her brief, so it is somewhat puzzling that she takes issue with them. Of course, whether or not Little had personal knowledge about the report and inspection, Rhoton similarly verified the existence of these facts, which Duffitt does not challenge.

Duffitt additionally challenges the statements in Little's affidavit that the City has limited resources and that it cannot repair all dangerous sidewalks. In Duffitt's view, these statements are conclusions of law and opinions regarding the main issue of the case. While the fact of limited finances is relevant to the question of discretionary decision-making, it is not a conclusion that the City's decisions are policy-based or immune from liability. Accordingly, we cannot agree that Little's statements regarding the City's limited funds amounted to improper conclusions of law or opinion. *Cf. McCrady,* 851 N.E.2d at 363–64 (finding that, in suit alleging violation of Open Door Law, statements by affiant that Open Door Law was violated were improper conclusions of law and conclusions regarding main issue of case).

## B. Adequacy of Affidavits

Duffitt additionally claims that the City cannot support the terms of its alleged policy on the basis of affidavits alone, that it must substantiate its policy with official documentation such as records or minutes. While the City designated certain official documents relating to its budget and budgetary constraints, the City's institution of a sidewalk-repair policy based upon its budget and other policy considerations was supported by affidavits alone. It is well-settled in Indiana that boards and commissions speak or act officially only through the minutes and records made at duly organized meetings. *Scott,* 659 N.E.2d at 590.

Here, apart from the affidavits of certain City officials, the City did not submit official documentation demonstrating the existence of the policies at issue. Nevertheless, this court has not uniformly required such documentation for purposes of establishing discretionary immunity. In the recent case of *Pairsh,* this court reversed a trial court's denial of summary judgment and remanded with instructions for entry of summary judgment on discretionary immunity grounds. 883 N.E.2d at 1208. The *Pairsh* court's determination that the defendant-municipality had exercised discretionary decision-making was based upon the affidavit of a single city manager averring to the budgetary considerations and cost-benefit analysis underlying that decision. *Id.* at 1205–06. Like in the instant case, the municipality in *Pairsh* had made a policy decision to prioritize

sidewalk repair, and it had made an additional policy decision to delegate sidewalk repair decisions to one of its managers, who was charged with prioritizing sidewalk repair based upon cost-benefit analyses and other policy considerations. This manager's affidavit regarding the decision-making process was deemed adequate to support summary judgment.

█ Significantly, the affidavits in the instant case are largely similar to the one endorsed by the *Pairsh* court supporting summary judgment. Furthermore, we see little justification for a blanket requirement for official minutes and/or records when certain of the policy decisions at issue in this case, as in *Pairsh*, were delegated to individual City managers whose policy decisions would have been made individually, presumably not at City meetings. Accordingly, we are inclined to adopt the *Pairsh* court's view that in cases where certain policy decisions have been delegated to individual employees, discretionary immunity may be established through affidavits. Indeed, affidavits may perhaps be the best means of demonstrating the decision-making process in such cases. We reach this conclusion especially in light of the *Peavler* court's discretionary immunity analysis, which suggests that information regarding the decision-making process at issue, from persons privy to the process, is relevant evidence for discretionary immunity analysis determinations. 528 N.E.2d at 48 (listing "testimony of commissioners regarding the decision-making process involved" as relevant evidence for determining whether decisions are based on policy considerations); *see also Gerbers, Ltd. v. Wells County Drainage Bd.*, 608 N.E.2d 997, 999–1000 (Ind.Ct. App.1993), (assessing board's decision-making process on the basis of board members' affidavits when the necessary

evidence was largely absent from the minutes), *trans. denied.*

We recognize that other panels of this court have reached the contrary conclusion. In *Scott*, a personal injury action against a municipality for failure to maintain a street, this court rejected the municipality's claim of discretionary immunity because its designated evidence did not evidence official action by its decision-making body, the Board of Public Works. 659 N.E.2d at 590. While the municipality designated depositions and testimony by certain officials, including the Director of Public Works who made the decision at issue based upon fund availability and efficiency concerns, the *Scott* court concluded that this was inadequate evidence of official Board action. *Id.* In reaching this conclusion, the *Scott* court reasoned that (1) evidence outside of the board's minutes and records that the board presumed to act in its official capacity is not competent evidence to substitute for the minutes and records of regular board action; and (2) actions of individual members of a board or commission outside a meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof. *Id.* Because, in the *Scott* court's view, "explanations of individual City officials outside of a meeting are not a substitute for official action," there was no competent evidence that the municipality had engaged in a systematic decision-making process involving basic policy characterized by official judgment. *Id.* at 591. Accordingly, the municipality was not entitled to immunity. *Id.*

In the more recent case of *Madden v. Ind. Dep't of Transp.*, 832 N.E.2d 1122, 1124 (Ind.Ct.App.2005), this court again reversed a summary judgment favoring a defendant municipality in a personal injury

action.[3] In doing so, the *Madden* court observed that it could not find discretionary function immunity based solely on testimony by a representative of a governmental entity that meetings were held, without written documentation of the meetings. *Id.* at 1128. As the *Madden* court stated, the public policy decisions that are entitled to discretionary function immunity must have been made by the governmental entity in its official capacity. *Id.* at 1129. Unless the governmental entity submits minutes of meetings, a trial court cannot conclude the entity is entitled to immunity based on the exercise of its official judgment. *Id.*

To the extent *Scott* and *Madden* dealt only with alleged policy decisions entrusted to a governmental entity, and not also to a single employee, they are distinguishable from the instant case. To the extent they suggest that official records and/or minutes are required in all cases, we are convinced that they are unduly restrictive. *See* Ind.Code section 34–13–3–3(7) (providing for discretionary immunity for governmental entities and employees). Accordingly, we follow the *Pairsh* court's lead and conclude that the affidavits in this case were adequate to establish discretionary immunity.

### III. Applicability of City's Policy to Specific Sidewalk

Duffitt last argues that there is a genuine issue of material fact regarding the applicability of the City's policy to her sidewalk. For purposes of evaluating discretionary immunity, it does not matter whether the City failed to demonstrate the applicability of its policy to the specific sidewalk in question. "The governmental entity seeking to establish immunity bears the burden of proving that the challenged

act or omission was a policy decision made by the conscious balancing of risks and benefits." *Voit v. Allen County*, 634 N.E.2d 767, 770 (Ind.Ct.App.1994) (quotation omitted), *trans. denied.* In the case of omissions, a conscious balancing may be demonstrated by evidence showing that the governmental entity considered improvements of the general type alleged in the plaintiff's complaint. *Id.* Where this is shown, there is no need for the entity to demonstrate that it considered and rejected the specific improvements alleged. *Id.;* *see Rutherford*, 640 N.E.2d at 753–54. Here, we have already concluded that the City's policy regarding sidewalk repair is entitled to discretionary immunity. Duffitt does not dispute that her claim involves the general improvement of sidewalk repair. Pursuant to *Voit*, we find it unnecessary to consider whether the City has demonstrated that its policy extends to the specific segment of sidewalk at issue.

### IV. Conclusion

We have concluded that the City is entitled to discretionary immunity from Duffitt's claim and that her individual challenges to the City's evidence do not alter that conclusion. Accordingly, we reverse the trial court's denial of summary judgment and remand with instructions to enter summary judgment in favor of the City.

The judgment of the trial court is reversed, and the cause is remanded with instructions.

MATHIAS, J., and CRONE, J., concur.

---

**3.** The author of the *Madden* opinion dissented in the *Pairsh* case on the grounds that, *inter alia*, the submitted affidavits, without official records or minutes, constituted inadequate documentation of a policy decision. *See City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1208–09 (Ind.Ct.App.2008) (May, J., dissenting), *trans. denied.*