FILED

Apr 05 2016, 12:20 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT
Ian L. Stewart
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
David L. Byers
Andrew J. Noone
Holwager, Byers, & Caughey
Beech Grove, Indiana

# In the
# Indiana Supreme Court

No. 49S02-1604-CT-165

CITY OF BEECH GROVE,

*Appellant (Defendant below),*

v.

CATHY J. BELOAT,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D03-1302-CT-5276
The Honorable Patrick L. McCarty, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49

**April 5, 2016**

**David, Justice.**


Cathy Beloat, a citizen of Beech Grove, Indiana, fell and injured herself when she stepped into a hole on one of the Beech Grove City streets. She subsequently brought a claim against the City for her injuries. The City claimed it was immune from any liability under the discretionary function immunity provision within the Indiana Tort Claims Act (ITCA), among other things. The

trial court denied the City's motion for summary judgment. We now affirm that denial. To prevail on a claim that the City was entitled to discretionary function immunity under the ITCA, the City had the burden of showing that its omission was an official "policy decision made by consciously balancing risks and benefits." Peavler v. Board of Com'rs of Monroe County, 528 N.E.2d 40, 46 (Ind. 1988). The designated evidence failed to demonstrate that the City engaged in a policy decision to implement a total reconstruction project over carrying out individual repairs of road damage in the relevant area. Moreover, on summary judgment, "[a]ll facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." Mangold ex rel. Mangold v. Indiana Dept. of Natural Resources, 756 N.E.2d 970, 973 (Ind. 2001). As such, we affirm the trial court's denial of summary judgment and remand for further proceedings.

**Facts and Procedural History**

On the afternoon of June 19, 2012, Cathy Beloat was walking from her home in Beech Grove, Indiana (the City) to the library. Beloat walked up Main Street and then began crossing the street where Main Street intersects with 10th Street. As she was crossing the street, she stepped slightly outside of the crosswalk to avoid a white pick-up truck that had stopped a few feet into the crosswalk area. She then heard a snap, and she fell to the ground. She looked down to see her foot was wedged in a hole. Beloat remained sitting in the street until two individuals assisted her to a nearby curb. One of these individuals then drove her to the hospital, where Beloat learned that she had broken her leg.

Beloat subsequently filed a complaint against the City, alleging that the City had negligently failed to maintain Main Street, and as a result, she had stepped into a hole in the street, causing her to fall and incur medical bills and pain and suffering for her injuries. The City responded, denying any liability and asserting, among other things, immunity under the Indiana Tort Claims Act (ITCA), Indiana Code § 34-13-3-3. On March 19, 2014, the City motioned for summary judgment. The City asserted: (1) Beloat was unable to establish the cause of her injury; (2) the City was immune from liability pursuant to the ITCA's discretionary function immunity

provision, Indiana Code § 34-13-3-3(7); and (3) Beloat was contributorily negligent. The City designated an affidavit from the City's mayor, Dennis Buckley, and minutes from multiple meetings of the City Board of Works and Safety and City Council to support its argument that the City was entitled to discretionary function immunity. Relevant facts regarding the designated evidence will be discussed in greater detail below.

A hearing on summary judgment was held on July 21, 2014. The City's motion for summary judgment was denied, and, upon the City's request, the trial court certified the order for interlocutory appeal. The Court of Appeals accepted interlocutory jurisdiction. In a split decision, the Court of Appeals determined that the City was entitled to discretionary function immunity, reversed the trial court's denial of summary judgment on the issue of immunity, and remanded the case with instructions to enter summary judgment in favor of the City. City of Beech Grove v. Beloat, 39 N.E.3d 691, 696-97 (Ind. Ct. App. 2015), vacated. Judge Robb dissented, arguing that the City failed to demonstrate that it was entitled to discretionary function immunity. Id. at 697-98, (Judge Robb, dissenting). We now grant transfer, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

**Standard of Review**

On review of a motion for summary judgment, our standard is the same as that of the trial court: "summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Mangold, 756 N.E.2d at 973. The facts and reasonable inferences are construed in favor of the non-moving party. Id. The court may only rely upon the evidence designated by the parties. Id. Summary judgment is not appropriate "merely because the non-movant appears unlikely to prevail at trial." Hughley v. State, 15 N.E.3d 1000, 1004 (Ind. 2014) (quoting Tucher v. Brothers Auto Salvage Yard, Inc., 564 N.E.2d 560, 564 (Ind. Ct. App. 1991)). Rather, "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." Hughley, 15 N.E.3d at 1004.

3

**Discussion**

The parties now dispute only whether the City is entitled to discretionary function immunity under the ITCA. Ind. Code § 34-13-3-3. "Pursuant to the ITCA, governmental entities can be subject to liability for tortious conduct unless the conduct is within an immunity granted by Section 3 of [the] ITCA." Veolia Water Indianapolis, LLC v. National Trust Ins. Co., 3 N.E.3d 1, 5 (Ind. 2014). The ITCA provides in pertinent part that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . (7) The performance of a discretionary function . . . ." Ind. Code § 34-13-3-3(7). Whether an act is discretionary "is a question of law for the court's determination." Peavler, 528 N.E.2d at 46. The burden is upon the entity seeking immunity to demonstrate that "the challenged act or omission was a policy decision made by consciously balancing risks and benefits." Id. Moreover, this Court has cautioned that "[d]iscretionary immunity must be narrowly construed because it is an exception to the general rule of liability." Id. (citing Larson v. Ind. School Dist. No. 314, 289 N.W.2d 112, 121 (Minn. 1979)).

Keeping in mind our summary judgment standard of review, requiring all inferences to be construed in favor of the non-moving party, we ultimately conclude that the City's motion for summary judgment, based upon the designated evidence, must fail.

**I. The Designated Evidence does not Support Application of Discretionary Function Immunity**

In Peavler, this Court expressly adopted the "planning/operational test" for addressing claims of discretionary function immunity. Peavler, 528 N.E.2d at 46. This test is designed to "insulate[] only those significant policy and political decisions which cannot be assessed by customary tort standards." Id. at 45. This assessment requires close consideration of the nature

4

of the governmental actions and the decision-making process that was involved.  Id.  Labeling an action as planning or operational, without more, is insufficient to determine whether immunity exists.  Id.  Planning activities include acts or omissions "in the exercise of a legislative, judicial, or executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy."  Id. (citing Marrek v. Cleveland Metroparks Board of Com'rs, 9 Ohio 3d 194, 459 N.E.2d 873 (1984)).  However, the distinction between planning and operational functions is only a standard, not a precise rule.  Peavler, 528 N.E.2d at 45.  The ultimate consideration is whether the action is one that was intended to be immune, and "the court should look to the purposes of immunity to determine whether those purposes would be furthered by extending immunity to the act in question."[1]  Id. at 46.

---

[1] Factors that this Court delineated that may point toward immunity include:

1. The nature of the conduct-
   a. Whether the conduct has a regulatory objective;
   b. Whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard;
   c. Whether the conduct requires a judgment based on policy decisions;
   d. Whether the decision involved adopting general principles or only applying them;
   e. Whether the conduct involved establishment of plans, specifications and schedule; and
   f. Whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources.
2. The effect on governmental operations-
   a. Whether the decision affects the feasibility or practicability of a government program; and
   b. Whether liability will affect the effective administration of the function in question.
3. The capacity of the court to evaluate the propriety of the government's action-
   Whether tort standards offer an insufficient evaluation of the plaintiff's claim.

Our Court of Appeals has applied the planning/operational test under various circumstances. In each case, similar types of evidence have been relied upon to determine whether a policy decision was made, and ultimately whether application of discretionary function immunity is appropriate. We now examine these cases to shed light on these commonalities and to aid our assessment of the evidence that has been designated by the City in the present case.

In Lee v. State, a vehicle accident on State Road 7, at the "Wirt Curves," resulted in the death of a teenager, whose parents alleged that the Indiana Department of Transportation was negligent in the design and proper maintenance of the road and failed to warn motorists of the danger. 682 N.E.2d 576, 577 (Ind. Ct. App. 1997). The State asserted it was entitled to discretionary function immunity. Id. The court noted that in "cases of omission 'a conscious balancing may be demonstrated by evidence showing that a governmental entity considered improvements of the general type alleged in plaintiff's complaint.'" Id. at 578 (quoting Voit v. Allen Cnty., 634 N.E.2d 767, 770 (Ind. Ct. App. 1994)). The following evidence was presented to demonstrate that improvements to S.R. 7 were in the planning phase: (1) "a significant amount of correspondence" regarding the history of accidents and dangers presented by the Wirt Curves; (2) two separate investigations by INDOT into replacing the bridge near the Wirt Curves; (3) INDOT's decision to combine the bridge replacement with the Wirt Curve project into one large reconstruction project; (4) INDOT approval of the larger project; (5) holding of a public hearing and obtaining approval from the Federal Highway Administration; (6) final completion of the engineering for the project, and moving into appraising value of land that would have to be acquired; and (7) awarding a contract for the project. Id. at 578-79. The evidence designated by INDOT clearly demonstrated the multiple phases of investigation, planning, modification, and

_____

Peavler, 528 N.E.2d at 46. Yet, these factors are not determinative, nor even applicable to every set of facts that may arise.

approval necessary to complete the reconstruction of S.R. 7. Due to the policy decisions that had been made by the State, the court held that the State was entitled to immunity.

In City of Indianapolis v. Duffitt, a complaint was brought against the city of Indianapolis for negligently failing to repair a sidewalk after Duffitt tripped and fell on a damaged area of the sidewalk, causing her physical injury. 929 N.E.2d 231, 234 (Ind. Ct. App. 2010). Indianapolis designated evidence demonstrating that it had limited funds to repair sidewalks, and due to the high demand on these limited funds, it had implemented a policy prioritizing side walk repairs and renovations. Id. at 237. The Department of Public Works or District Managers could then further prioritize or de-prioritize side walk repairs by conducting a cost-benefit analysis, with consideration of budgetary concerns and competing projects. Id. Indianapolis also demonstrated that certain decision-making that had been delegated to District Managers was also part of a "conscious policy decision." Id. Because Indianapolis had demonstrated that it performed "cost-benefit analyses which produced the City's prioritization scheme," the decisions were discretionary under the planning/operational test, and discretionary function immunity was appropriate. Id. at 238-39.

In the present case, the City has designated: (1) The Mayor's affidavit, and (2) Minutes from the City Council and the Board of Works and Safety meetings. Beloat did not object to the admission of the Mayor's affidavit at the summary judgment hearing. Thus, we first address the Mayor's affidavit. Specifically, to what degree can the Mayor's affidavit be relied upon to determine whether the failure to conduct routine maintenance on Main Street was postponed due to a policy determination to carry out complete reconstruction of Main Street.

The Mayor stated that "[f]or a number of years, the City of Beech Grove was in the planning and then execution process of a road reconstruction project of Main Street." (App. at 32.) "Rather than doing piecemeal repairs on Main Street, the City of Beech Grove chose to perform a complete road reconstruction of the street." Id. The Main Street Project was going to consist of: "pavement replacement, enclosed storm drainage system, parking lanes, bike lane, curb

and gutter, sidewalks, and other improvements to the Main Street pedestrian and vehicular corridor." Id. There is no mention of the specific cost-benefit analysis that occurred in order to determine that a total reconstruction project was preferable, or how the City determined what repairs would be included within the reconstruction project and why.

Decisions from Indiana courts, within the context of the ITCA and in other contexts, have reiterated that "[t]he actions of individual members of a board or commission outside a meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof." Scott v. City of Seymour, 659 N.E.2d 585, 590 (Ind. Ct. App. 1995) (citing Jones v. State ex. rel. Indiana Livestock Sanitary Bd., 240 Ind. 230, 238, 163 N.E.2d 605, 608 (1960)). See also Brademas v. St. Joseph County Com'rs, 621 N.E.2d 1133, 1137 (Ind. Ct. App. 1993) (explaining that "[b]oards and commissions speak or act officially only through the minutes and records made at duly organized meetings"). Here, the Mayor served as the presiding officer over the City Council, but his comments and actions alone are not actions of the board itself, as he only serves as an individual member on that board. (Ord. 2-1983, § 31.04). "Discretionary immunity . . . was not intended to protect a policy decision made by one Board member." Scott, 659 N.E.2d at 591. Thus, the Mayor's affidavit cannot be solely relied upon to demonstrate that the City engaged in a policy determination in this case. Because "[p]ublic policy decisions committed to a board or commission and entitled to discretionary immunity must be made in public in the manner provided by law, not on an informal basis outside of the public record," we must look to the designated minutes of the City Council and Board of Works and Safety to determine whether a policy-oriented decision making process occurred.[2] Id.

---

[2] Even if the Mayor's affidavit alone could be relied upon, the Mayor's affidavit is a conclusory statement that a policy decision was made to perform a total reconstruction project rather than conduct piecemeal repairs. This Court is required to look into "the nature of the governmental act and the decision-making

In addition, nothing in the record indicates that the Mayor had been delegated individual authority to weigh the cost and benefits of road repairs and make an independent policy decision regarding whether certain repairs should be made over others. The Mayor's own affidavit does not even claim to have such authority. Rather, the Mayor asserts that "*the City of Beech Grove* chose to perform a complete road reconstruction." (App. at 32.) (emphasis added). This is unlike City of Terre Haute v. Pairsh, where the court considered the policy decisions made by the City Transportation Infrastructure Manager, who had been specifically delegated policy-making and prioritization assessment authority from the relevant governmental body. 883 N.E.2d 1203, 1207 (Ind. Ct. App. 2008). Here, the parties do not assert that the Mayor had been delegated authority to individually make policy decisions on behalf of the entire City Council.[3] Because the Mayor's affidavit alone cannot be relied upon to demonstrate that an official policy decision was made, we now look to the designated minutes from the City Council and Board of Works and Safety meetings.

As for the remaining designated evidence of official conduct, the City Council meeting minutes seem to almost exclusively discuss the financial aspect of the Main Street Project. At the May 7, 2012, meeting, the Mayor explained that the money available in the general obligation bond for the City was insufficient to pay for various projects, one of which included the Main Street Project. A representative from Crossroads Engineers (Crossroads) explained that

*process* involved." Peavler, 528 N.E.2d at 45 (emphasis added). "Merely labeling an action as planning or operational, without more, cannot pass for analysis." Id.

[3] We acknowledge that the Court of Appeals in Pairsh was split on the issue of whether an individual who has been delegated policy-making powers can constitute "official action" for purposes of immunity. See Pairsh, 883 N.E.2d at 1209-1211 (Judge May, dissenting). Because the Mayor and the City make no claim that the Mayor was delegated an independent policy-making role, we do not express our agreement or disagreement with the conclusion in Pairsh. We find it sufficient to conclude that official action could not be demonstrated by the Mayor's affidavit alone in this case.

construction was expected to start in the fall, and while "there were no changes on paper, items were scaled back within the projects." (App. at 57.) On June 4, 2012, Crossroads gave an update on the Main Street Project, but the details of that update were not provided in the minutes. A first reading of Ordinance No. 18 and No. 19 were also voted upon, which authorized the issuance and sale of bonds for City use, which included "various infrastructure improvement and updates." (App. at 67-68.) On June 18, 2012, the City Council heard the second reading of General Ordinance No. 18. On July 2, 2012, the City Council voted for final approval of Ordinance No. 18 and Ordinance No. 19, which would allow for the funding of the Main Street Project, among other things. Again on November 5, 2012, further discussion of the Main Street Project occurred, namely that Crossroads had a temporary office set up to work with business owners with the goal of "minimiz[ing] the impact to local business from the construction[.]" (App. at 118, 122.) The Main Street Project was on track to begin after the Citizens Water project, which was addressing water main issues underneath Main Street.[4]

There was also mention of the Main Street project at the Board of Works and Safety meetings. On April 16, 2012, the Clerk explained that a claim from Crossroads was presented in relation to the Main Street Project. Again on May 7, 2012, the Mayor explained that certain bills that were to be paid to Crossroads were for the Main Street Project. At the June 4, 2012, meeting, the Board of Works and Safety approved by unanimous voice vote the Main Street Project Inspection Agreement that was presented by Crossroads. As Peavler set out, planning activities include, "Government decisions about policy formation which involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources." 528 N.E.2d at 45. The minutes presented within the record do not reflect any discussion about how

---

[4] The City Council minutes clarify that the Citizens Water Project, also occurring on Main Street, "should not be confused with the Main Street project as Beech Grove is not affiliated with this, nor is Beech Grove incurring the cost associated with it." (App. at 122.)

the area encompassed within the Project was decided upon, why specific repairs were selected over others, what would be done about road damage in the meantime, why total reconstruction was necessary, or the costs of total reconstruction compared to conducting other individual repairs.

The minutes do demonstrate that a procedure was followed in approving the necessary funding for the Main Street Project and that discussions regarding the funding and timeline for the project spanned a significant period of time. With this, an inference could be made that the City Council and/or the Board of Works and Safety, at some point, engaged in a policy discussion about the benefits, risks, and cost allocation associated with the Main Street Project. The need for such a large and expensive project was likely explained, the specifics of the project debated, and the final plan for what would be included ultimately voted upon.

However, our standard of review forbids such an inference. On summary judgment, all facts and reasonable inferences must be drawn in favor of the non-moving party, which in this case is Beloat, not the City. Mangold, 756 N.E.2d at 973. Here, the actual weighing of options, discussion of alternatives, or cost-benefit analysis are nowhere within the minutes that were designated as evidence for the purposes of summary judgment.[5] They may exist somewhere, but are not in the record we reviewed. Rather, the minutes reflect the steps taken to fund a project that had already been discussed, planned, and approved. Even the City seems to occasionally acknowledge that the record shows the "systematic decision-making process involved in *approving financing* for complete reconstruction of the area of Main Street where plaintiff fell." (Resp. Pet. Tr. at 4.) (emphasis added). Yet, the approval of financing alone does not demonstrate

---

[5] We also note that several of the relevant inquiries set out in Peavler, and provided in footnote one, would also require inferences to be made in order to answer. For example, "whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard?" Peavler, 528 N.E.2d at 46. Here, the minutes reflect no balancing of different options. Thus, it is impossible to assess whether the balancing that possibly took place was done without reliance upon a rule or standard.

11

the cost-benefit analysis, weighing of other options, and prioritization discussions that are needed to determine that the City had in fact engaged in a policy-oriented decision making process.

We acknowledge that multiple cases have addressed discretionary function immunity and explain that there is "no need for the entity to demonstrate that it considered and rejected the specific improvements alleged." Voit, 634 N.E.2d at 770. We agree and do not wish to change that standard now. However, a governmental entity must demonstrate that "conscious balancing" took place, which can be shown by evidence that "the governmental entity considered improvements of the general type alleged in [the plaintiff's] complaint." Id. While the City did not need to demonstrate that it considered whether it should fill the specific hole that was alleged to have caused Beloat's injuries, it did have to make some showing that the Main Street Project was implemented instead of general road repairs, such as filling pot holes, and that the costs and benefits of this decision were weighed. That is simply not present within this record.

While the facts presented in this case may have made the decision on immunity a close call, in those circumstances, we err on the side of narrowly construing a finding of immunity. Because the designated evidence of official action does not demonstrate the prioritization or cost-benefit analysis that went into the development and approval of the Main Street Project, the City is not entitled to discretionary function immunity under the ITCA on summary judgment. Although it may be true that the City was within the planning phase of its reconstruction project when the incident occurred, we cannot reach that conclusion without drawing an inference against the non-movant. Thus, we affirm the trial court's denial of summary judgment. On remand, the City "bear[s] the burden [of] demonstrat[ing] the discretionary nature of the decision in order to prevail on a claim of immunity." Peavler, 528 N.E.2d at 48.

12

## Conclusion

Based upon our review of the designated evidence and our existing precedent, the City failed to meet its burden of demonstrating that the challenged act or omission was a policy decision made by consciously balancing risks and benefits. Thus, the City was not entitled to summary judgment on the question of discretionary function immunity under the ITCA. We affirm the trial court's denial of summary judgment and remand for further proceedings.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.