CITY OF TERRE HAUTE, Engineer's Office of the City of Terre Haute, and City of Terre Haute Street Commissioners, Appellants–Defendants,

v.

Annette PAIRSH, Appellee–Plaintiff.

No. 84A05–0707–CV–402.

Court of Appeals of Indiana.

April 10, 2008.

---

William W. Drummy, William S. Frankel, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy LLP, Terre Haute, IN, Attorneys for Appellants.

John P. Nichols, Anderson & Nichols, Terre Haute, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Defendants, City of Terre Haute, Engineer's Office of the City of Terre Haute, and City of Terre Haute Street Commissioners (collectively, the City), appeal the trial court's denial of their motion for summary judgment in Appellee–Plaintiff's, Annette Pairsh (Pairsh), personal injury action.

We reverse and remand.

*ISSUE*

The City raises one issue on appeal, which we restate as: Whether the City is immune from liability for Pairsh's injuries pursuant to the Indiana Tort Claims Act (ITCA), Indiana Code § 34–13–3–1 *et seq.*

*FACTS AND PROCEDURAL HISTORY*

Pairsh alleges that on May 1, 2005, she tripped and fell while walking on a sidewalk in Collett Park in Terre Haute, Indiana, resulting in "skinned" hands and knees and a broken and dislocated right wrist. (Appellants' App. p. 36). On May 31, 2006, Pairsh filed a Complaint for Damages against the City, claiming that she was injured as a result of the City's negligence. Pairsh alleged that "the sidewalk was dilapidated and had an uneven walking surface which caused her to trip and fall to the ground." (Appellants' App. p. 20). Later, in response to an interrogatory, Pairsh claimed that "[t]he right side of the sidewalk was pushed up about two inches above the left side." (Appellants' App. p. 47).

On November 17, 2006, the City filed a Motion for Summary Judgment, arguing that even if it was negligent in maintaining the sidewalk, it was entitled to governmental immunity under the ITCA. In support of its motion, the City designated the affidavit of George Decker (Decker), the Transportation Infrastructure Manager for the City. Decker's affidavit provided, in pertinent part:

2. That [the City] has limited funds to make repairs to sidewalks. Therefore, [the city council] along with the Mayor has determined that given our City['s] limited budget and manpower, it is impossible to fix all sidewalks; therefore, the decision was made to prioritize the sidewalk repair and renovation.

3. I hold the title of Transportation Infrastructure Manager for [the City]. Part of my job beginning in 2001 and including into the year 2002 was to inspect and rate sidewalks to determine whether they are a priority for reconstruction or repair.

4. That during the course and scope of my employment with [the City], I inspected sidewalks at Collett[ ] Park in [the City].

5. That I was given the job by the City government to rank the sidewalks in such a fashion as to determine which ones need to have immediate repair and to prioritize the repairs accordingly.

6. The decision to empower me with the discretion to prioritize the sidewalk repair was based on the City's conscious policy decision. In prioritizing the sidewalk, I determined on the basis of a cost benefit analysis as to the benefits of the specific sidewalk repair weigh[ed] against the cost of repair. The cost of repair included not only the actual money and manpower that would need to be expended to repair this particular stretch of sidewalk but also the fact that it would take away assets for the repair of other sidewalks [that] are in more need of repair and, thus, have higher priority.

7. That I determined that the sidewalks at Collett[ ] Park did not constitute an immediate hazard to pedestrians warranting immediate reconstruction and repair. The City has limited funds for the repair and renovation of sidewalks and based on my inspection of the sidewalks [they] were not in a sufficient state of disrepair as to justify the expenditure of limited City money and manpower to repair said sidewalks. In other words, there were more sidewalks that were of greater priority that needed to be repaired first at that time.

8. That it was my decision and my rating based upon my inspection and judgment that the sidewalks at Col-

lett[ ] Park did not constitute an immediate hazard and that there were other sidewalks that should be repaired prior to the ones at Collett[ ] Park. I made this decision by weighing the potential benefit of the sidewalk repair against the costs involved with the repair.

9. Prior to May 1, 2005, when [Pairsh] claimed she fell, I had no notice that the sidewalk was in a dangerous or unsafe condition. In fact, as of my inspection, the sidewalk was in good condition and did not constitute an immediate hazard or danger to those using the sidewalk.

(Appellants' App. p. 25–26).

On June 7, 2007, the trial court issued its Order denying the City's motion. The trial court then certified its Order for interlocutory appeal, and we accepted jurisdiction.

The City now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

On appeal, the City argues that the trial court erred in denying its motion for summary judgment. In reviewing a decision on a motion for summary judgment, we apply the same standard as the trial court. *Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1190 (Ind.Ct.App.2003), *reh'g denied, trans. denied.* That is, summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Boston,* 785 N.E.2d at 1190. Once this burden has been met, the nonmoving party must respond by setting forth specific facts demonstrating a genuine need for trial, and cannot rest upon the allegations

or denials in the pleadings. *Id.* We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the nonmoving party so as not to deny that party its day in court. *Id.*

■■■ The City contends that it is entitled to governmental immunity under the ITCA, I.C. § 34–13–3–1 *et seq.* Specifically, it directs us to Indiana Code § 34–13–3–3(7), which provides that a governmental entity is not liable if a loss results from the performance of a *discretionary function.* The City asserts that it is immune from liability arising from Pairsh's fall because the repair of the sidewalk in question is a discretionary function. "The issue of whether an act is discretionary and therefore immune is a question of law for the court's determination." *Peavler v. Board of Comm'rs of Monroe County,* 528 N.E.2d 40, 46 (Ind.1988).

■ Our supreme court has adopted the "planning-operational test" for determining whether a function is discretionary for purposes of the ITCA. *Id.* The planning-operational standard "dictates that a governmental entity will not be held liable for negligence arising from decisions which are made at a planning level, as opposed to an operational level." *City of Crown Point v. Rutherford,* 640 N.E.2d 750, 752 (Ind.Ct. App.1994), *reh'g denied, trans. denied.* We have discussed the test as follows:

[I]f the decision of the governmental entity was a "planning" activity, that is a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and immune under [I.C. § 34–13–3–3(7) ]. Government decisions about policy formation which involve assessment of competing priorities, a weighing of budgetary consider-

ations, or the allocation of scarce resources are also planning activities. On the other hand, if the function is "operational," for example decisions regarding only the execution or implementation of already formulated policy, the function is not discretionary under the statute and no immunity attaches.

*Voit v. Allen County,* 634 N.E.2d 767, 769–70 (Ind.Ct.App.1994) (citations omitted), *reh'g dismissed, trans. denied.*

In *Rutherford,* we addressed a claim of discretionary function immunity in the context of sidewalk repairs. Rutherford fell on a sidewalk and sued the City of Crown Point. We stated the issue as "whether Crown Point's management of its sidewalk rehabilitation program resulted from decisions involving the formulation of basic policy and from a balancing of risks and benefits." *Rutherford,* 640 N.E.2d at 754. In ruling in favor of Crown Point, we noted:

> Crown Point had instituted a comprehensive scheme to renovate its sidewalks. The key decision-makers contemplated and balanced public policy factors and weighed budgetary considerations in the allocation of resources. . . . [T]he resources to achieve the goal of complete sidewalk renovation were not available. The City attempted to utilize the funds that were available to it in the most effective way and in a way that would serve the largest number of its citizenry. There were competing interests, and the City did consider these competing interests.

*Id.* Citing *Peavler,* we concluded that "the City made discretionary decisions about policy formation which involved assessment of competing priorities and a weighing of budgetary considerations and the allocation of scarce resources." *Id.* at 755.

In *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1119 (Ind.Ct.App.1995),

*trans. denied,* on the other hand, we denied a municipality's claim of immunity arising from its policy for dealing with defective sidewalks, "whereby concerned residents, if they are so inclined, contact Highland with their concerns. If, upon inspection, Highland finds the sidewalk in need of repair, it removes the defective sidewalk. It is then the homeowner's responsibility to pay for the replacement of the sidewalk." We held that "the program implemented by Highland does not amount to a policy oriented decision-making process as required by *Peavler[.]*" *Id.* Highland "failed to demonstrate that it engaged in any type of systematic process for determining which sidewalks were in need of repair or that it implemented a policy weighing budgetary considerations to replace defective sidewalks." *Id.*

The evidence designated by Terre Haute in this case, namely, Decker's affidavit, shows that its approach to sidewalk repair is much more like the Crown Point policy described in *Rutherford* than the Highland policy described in *Zerkel.* Decker stated that because of the City's limited budget, the decision was made to prioritize the sidewalk repair and renovation. The City empowered Decker, as part of his job as Transportation Infrastructure Manager for the City, to inspect and rate sidewalks "to determine whether they are a priority for reconstruction or repair." (Appellants' App. p. 25). In prioritizing a sidewalk, Decker weighed the benefits of a specific sidewalk repair against the cost of the repair. "The cost of repair included not only the actual money and manpower that would need to be expended to repair this particular stretch of sidewalk but also the fact that it would take away assets for the repair of other sidewalks [that] are in more need of repair and, thus, have higher priority." (Appellants' App. pp. 25–26). Decker stated that he inspected sidewalks

at Collett Park and determined that the sidewalks "did not constitute an immediate hazard to pedestrians warranting immediate reconstruction and repair" and that "there were more sidewalks that were of greater priority that needed to be repaired first at that time." (Appellants' App. p. 26).

Decker's affidavit reflects the exercise of official judgment and discretion, the weighing of alternatives, an assessment of competing priorities, the weighing of budgetary considerations, and the allocation of scarce resources, all of which are "planning activities" under the *Peavler* "planning-operational test." *See Voit*, 634 N.E.2d at 770. Once the City designated this evidence of a systematic process for determining which sidewalks to repair, the burden was on Pairsh to point to contradictory evidence in order to create a genuine issue of material fact. *See Boston*, 785 N.E.2d at 1190. Pairsh did not do so. In her Designation of Materials in Opposition to Defendants' Motion for Summary Judgment, Pairsh designated (1) her complaint, (2) the City's answer to her complaint, (3) Decker's affidavit, (4) her memorandum in opposition of the City's motion for summary judgment, and (5) her answers to interrogatories. However, she did not designate any specific portions of those materials, and her memorandum did not include any citations to evidence regarding the issue of whether the City's sidewalk repair policy constituted a discretionary function. In short, Pairsh did nothing to create a genuine issue of material fact as to discretionary function immunity.

Nonetheless, Pairsh argues on appeal that the City "has admitted that this was not a policy decision but rather a decision made by [Decker], a department manager for [the City]." (Appellee's Br. p. 4). However, Pairsh does not offer any reasoning or cite to any authority to support the proposition that a municipality cannot delegate policy decisions to department managers. As such, she has waived this argument. *See Davis v. State*, 835 N.E.2d 1102, 1113 (Ind.Ct.App.2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied.*

■ Pairsh dedicates the rest of her brief to discussing the elements of a negligence action. But, as our supreme court stated in *Peavler,* "Immunity assumes negligence but denies liability. Thus, the issues of duty, breach and causation are not before the court in deciding whether the government entity is immune." 528 N.E.2d at 46. Because Pairsh failed to designate any evidence to contradict the City's evidence supporting its claim of discretionary function immunity, we do not reach the elements of negligence.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in denying the City's motion for summary judgment. Therefore, we remand this cause to the trial court with instructions to enter summary judgment in favor of the City.

Reversed and remanded.

KIRSCH, J., concurs.

MAY, J., dissents with opinion.

MAY, Judge, dissenting.

The evidence the City designated does not establish as a matter of law that its decision not to repair the sidewalk where Pairsh fell was performance of a discretionary function that entitles the City to tort immunity. I therefore believe the denial of the City's summary judgment motion was correct, and I must respectfully dissent.

Because the Tort Claims Act is in derogation of the common law, we must construe it narrowly and decline to find immunity if possible. *Madden v. Indiana Dept. of Transp.*, 832 N.E.2d 1122, 1126 (Ind.Ct. App.2005). The party seeking immunity, here the City, bears the burden of proving it is shielded from liability. *Id.*

The Decker affidavit, on which the majority relies, states "the City counsel [1] [sic] along with the Mayor has determined that given our City [sic] limited budget and manpower, it is impossible to fix all sidewalks; therefore, the decision was made to prioritize" sidewalk repair, and Decker says he was assigned to inspect and rate sidewalks for that purpose. (App. at 25.) I do not believe we may find discretionary function immunity on that basis. *See Madden*, 832 N.E.2d at 1128 (no discretionary function immunity based solely on testimony by a representative of the governmental entity that meetings were held, without written documentation of the meetings).

Boards and commissions speak or act officially only through the minutes and records made at duly organized meetings. *Scott v. City of Seymour*, 659 N.E.2d 585, 588 (Ind.Ct.App.1995). The public policy decisions that are entitled to discretionary function immunity must have been made by the governmental entity in its official capacity. *Id.* Unless the government entity submits minutes of meetings, a trial court cannot conclude the entity is entitled to immunity based on the exercise of its official judgment. *Id.*

We addressed a situation similar to the one before us in *Scott*, where the trial court entered summary judgment in favor of Seymour premised partly on governmental immunity. In reversing, we determined Seymour's decision was not the re-

sult of a policy-oriented decision-making process as contemplated in *Peavler*.

As she was walking, Scott's shoe was caught in a hole in the street and she fell and fractured her foot. When Scott fell, Seymour was in the midst of a downtown redevelopment project, and maintenance and resurfacing of the street had been delayed until the end of the project. The project required cutting several downtown streets for underground wiring and curb installations. The application of asphalt overlay was delayed on the street where Scott was injured until other work on the project had been completed.

We found the decision to delay the resurfacing of the downtown area did not result from "a systematic decision-making process involving the formulation of basic policy characterized by official judgment." *Id.* at 591. "We are concerned specifically with the actual decision-making process which occurred in this instance." *Id.* The trial court therefore erred when it determined Seymour was entitled to governmental immunity.

The Seymour Board of Public Works was the governmental entity with legal authority and responsibility for the maintenance and resurfacing of city streets. In support of its claim of immunity, Seymour designated the deposition of the City Engineer and Director of Public Works, who testified he decided the application of asphalt overlay on the affected downtown streets should be delayed until the end of the redevelopment project so the overlay would be applied only once, thereby conserving Seymour's resources. The mayor testified he believed the Board had authorized the delay of asphalt overlay to the downtown area, and said "you wouldn't want to do the asphalt and then cut it back

---

**1.** It appears from the context of this statement in the affidavit that Decker was referring to

the City Council, and not to an attorney representing the City.

up and put the railroad in, it's like painting a wall then tearing the wall out." *Id.* at 590. Finally, Seymour designated the deposition of a Board member who was not on the Board when the decision to delay resurfacing of the street was made, but knew that based on the recommendation of the City Engineer, application of the overlay had been postponed until the end of the project. "[Y]ou don't want to go in there and do something, overlay, and then turn around and have to cut it out and then turn around and spend more taxpayer money then going back in and trying to overlay it again or to repair it." *Id.*

From that record we found "no evidence of official Board action." *Id.* The depositions in *Scott* did not suffice because:

It is well-settled in Indiana that boards and commissions speak or act officially only through the minutes and records made at duly organized meetings. Evidence outside of the board's minutes and records that the board presumed to act in its official capacity is not competent evidence to substitute for the minutes and records of regular board action. The actions of individual members of a board or commission outside a meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof.

In the present case, there is no record or minutes of any Board meeting or action taken by the Board concerning its "policy decision" to postpone resurfacing the affected streets. Indeed, the evidence shows that the delay in resurfacing downtown area streets was made by [the Engineer] alone and not by the entity responsible for making such decisions. [The three witnesses] each expressed his understanding of the policy and budget considerations behind the decision to postpone application of the asphalt overlay. Without considering

the merits of the decision, explanations of individual City officials outside of a meeting are not a substitute for official action and, therefore, are legally insufficient to confer discretionary function immunity. There is no evidence that the Board consciously weighed the risks and benefits of any decision while acting as a Board.

As we have noted, the fundamental concept underlying governmental immunity is the notion that certain kinds of executive or legislative branch policy decisions should not be subject to judicial review. Discretionary immunity, however, was not intended to protect a policy decision made by one Board member. Public policy decisions committed to a board or commission and entitled to discretionary immunity must be made in public in the manner provided by law, not on an informal basis outside of the public record. Without any minutes of a duly constituted Board meeting, we cannot conclude that the City, acting through its Board of Public Works, exercised official judgment or engaged in the necessary policy oriented decision-making process.

*Id.* at 590–91 (citations omitted). For the same reasons, the affidavit of the Terre Haute Transportation Infrastructure Manager in the case before us does not evidence official action.

In *Scott* we distinguished the *Rutherford* decision on which the majority opinion in the case before us relies:

Unlike the present case, in *Rutherford* there was ample evidence of a Board decision to utilize public monies and target certain areas for maintenance and renovation such as school zones, children's play areas, and other high traffic zones. *The parties did not dispute that Crown Point's Board of Public Works had taken official action when it made*

*its decision* .... [T]he key decision-makers contemplated and balanced public policy factors and weighed budgetary considerations in the allocation of resources.

\* \* \*

Here, without a contemporaneous public record of Board action, there is no competent evidence that the City engaged in a systematic decision-making process involving the formulation of basic policy characterized by official judgment. The trial court erred when it determined that the City was entitled to governmental immunity on this issue. *Id.* at 591 (emphasis supplied).

Even if Terre Haute had provided evidence of "official action," I would still find summary judgment inappropriate. In *Mills v. American Playground Device Co.,* 405 N.E.2d 621, 626 (Ind.Ct.App.1980), a child was injured when he fell from a slide installed in a Gas City park. The city argued it was immune from liability under the tort claims act because it was performing a discretionary function when it provided the park. We disagreed. "Once [Gas City] opted to provide a playground and to equip it, a ministerial duty arose to provide reasonably safe premises." *Id.* at 626.

We distinguished a municipality's discretionary and ministerial functions: A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way, and, in the absence of corrupt motives in the exercise of such discretion he is not liable. His duties, however, in the performance of the act, after he has once determined that it shall be done, are ministerial, and for negligence in such performance, which results in injury, he may be liable in damages.

*Id.,* quoting *Adams v. Schneider,* 71 Ind. App. 249, 255, 124 N.E. 718, 720 (1919).

The discretionary/ministerial distinction hinges on the demarcation between the decision to act and the acts or duties flowing from that decision. *Id.* We determined the decision to establish a park and to equip it was a discretionary function of local government "emanating from which is the ministerial duty to use reasonable care in carrying out that decision." *Id.* Once the city opted to provide a playground and equip it, a ministerial duty arose to provide reasonably safe premises. *Id. And see Benton v. City of Oakland City,* 721 N.E.2d 224, 233 (Ind.1999) (noting the distinction we recognized in *Mills* ).

We presumably determined the Crown Point "comprehensive scheme" to renovate its sidewalks addressed in *Rutherford,* 640 N.E.2d at 754, was akin to the decision the city made in *Mills* to establish a park and provide a playground. By contrast, I believe the Terre Haute decision merely to "prioritize" sidewalk repair is more akin to Gas City's "ministerial" decision in *Mills* to choose and install playground equipment than its "discretionary" decision to build a park and provide a playground.

I would affirm the denial of the City's motion for summary judgment.