## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 15 2017, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip H. Cade
New Albany, Indiana

ATTORNEYS FOR APPELLEE

R. Jeffrey Lowe
Crystal G. Rowe
Whitney E. Wood
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kimberly D. Hickman, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> City of Austin, <br> *Appellee-Defendant* | March 15, 2017 <br><br> Court of Appeals Case No. <br> 72A01-1608-CT-1977 <br><br> Appeal from the Scott Circuit Court <br><br> The Honorable Roger L. Duvall, Judge <br><br> Trial Court Cause No. <br> 72C01-1404-CT-9 |

**Vaidik, Chief Judge.**

# Case Summary

Kimberly Hickman sued the City of Austin, alleging that the City had negligently maintained a street and that she had fallen as a result. The trial court granted summary judgment in favor of the City, concluding that Hickman's claim relates to the City's performance of a discretionary function and that the City is therefore immune from liability under the Indiana Tort Claims Act. We disagree with that conclusion and reverse.

# Facts and Procedural History

In her complaint, Hickman alleges that she was walking on North Street in Austin on May 4, 2012, when she stepped in a hole, fell, and was injured. In the area in which she claims to have fallen, Stucker Fork Water Utility had made a "street cut" at some point during the preceding year. On "several occasions" after the street cut was made, including once during the two weeks before May 4, 2012, employees of the City placed "black top" on or near the cut "to try to even the road out," a process known as "cold patching." Appellee's App. Vol. II p. 44. Hickman contends that the City "was negligent in the maintenance of its roadway[.]" Appellant's App. Vol. II pp. 11-12.

The City moved for summary judgment pursuant to Indiana Code section 34-13-3-3(7), which provides that a governmental entity is immune from liability if the loss at issue results from "[t]he performance of a discretionary function[.]" The City argued that its "decision whether to patch or repave the road where

Plaintiff fell was discretionary" within the meaning of that statute and that it "is therefore immune as a matter of law[.]" *Id*. at 22.

[4] In support of it motion, the City designated the affidavit of Shane Terry, the City's "Street Superintendent." Appellee's App. Vol. II p. 43. Among other things, Terry said:

> 3. The City has limited funds to make repairs to roads. Therefore, the City elected officials have determined that it is impossible to permanently repair all roads.
>
> 4. Based on the limited funds available to the City for road repairs, the decision was made to prioritize which roads need to be fully reconstructed, for which City Council approves and appropriates funds.
>
> 5. In order to keep the City's streets safe, the City devised an unwritten policy to make temporary repairs to roads until City Council is able to appropriate funds for permanent road repairs. Specifically, once a week, in my capacity as City Street Superintendent and employee of the City, I send members of my Department out into the City to check for potholes. They determine which holes need patched and then our Department places black top over the potholes in need of repair, which is also referred to as "cold patching."
>
> 6. To obtain funds for these "cold patching" repairs, each year I speak with the Board of Works, which includes the Mayor and Clerk-Treasurer, and request funds I anticipate will be needed for the cold patchwork, which they have the power to grant or deny.

*Id*. at 43-44.  He also explained that "cold patching is only a temporary solution and can wash out with rain or cold weather."  *Id*. at 44.

[5]     The City also designated the affidavit of Dillo Bush, the City's mayor, who corroborated much of what Terry said and added:

> 4.  . . . The City Council prioritizes which roads receive the City's limited funds for complete reconstruction and repair by listening to complaints from citizens and various City employees and experts, then weighing the benefits of the specific road repair against the cost of the repair.
>
> *       *       *       *
>
> 9.  Prior to Kimberly Hickman's May 4, 2012 fall, based upon the lack of reports received from its experts, citizens and reports from employees (like Shane Terry, [whose] Department is specifically employed to evaluate and repair road conditions), the City Council had determined other roads, such as Boatman Road, were of greater priority and in more immediate needed to [sic] the limited funds available to repair roads than the street cut on North Street.

*Id*. at 46-48.

[6]     After a hearing, the trial court granted the City's motion, finding that it "is immune from liability for the injuries sustained by the Plaintiff pursuant to the Indiana Tort Claims Act under the discretionary immunity defense." Appellant's App. Vol. II p. 9.

[7]     Hickman now appeals.

# Discussion and Decision

[8] Hickman contends that the trial court should have denied the City's motion for summary judgment. She does not challenge the City's designated evidence about its approach to street repairs, but she argues that the evidence is insufficient as a matter of law to entitle the City to discretionary-function immunity. On appeal from a grant of summary judgment, we address the issues de novo, giving no deference to the trial court's decision. *Rogers Group, Inc. v. Tippecanoe Cty.*, 52 N.E.3d 848, 850 (Ind. Ct. App. 2016), *trans. denied*.

[9] As noted earlier, the Indiana Tort Claims Act provides that a governmental entity is immune from liability if the loss at issue results from "[t]he performance of a discretionary function[.]" Ind. Code § 34-13-3-3(7). In determining whether an alleged loss resulted from a government entity's performance of a discretionary function, Indiana courts apply the "planning/operational test." *Peavler v. Bd. of Commr's of Monroe Cty.*, 528 N.E.2d 40, 43-45 (Ind. 1988). This test distinguishes "decisions involving the formulation of basic policy, entitled to immunity," from "decisions regarding only the execution or implementation of that policy, not entitled to immunity." *Greathouse v. Armstrong*, 616 N.E.2d 364, 366-67 (Ind. 1993). The test insulates "'only those significant policy and political decisions which cannot be assessed by customary tort standards.'" *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 138 (Ind. 2016) (quoting *Peavler*, 528 N.E.2d at 45).

[10] Here, the City argues that its "decision regarding whether to patch or repave the road where Hickman fell was the type of function that the legislature intended to protect with immunity." Appellee's Br. p. 19. In short, the City asserts that it made a policy decision that certain streets would not be patched or repaved. But the City actually made the exact opposite decision. As both the mayor and the street superintendent explained in their affidavits, "In order to keep the City's streets safe, the City devised an unwritten policy to make temporary repairs to roads until City Council is able to appropriate funds for permanent road repairs." Appellee's App. Vol. II pp. 43, 47. Specifically, employees of the street department would be sent out to "determine which holes need patched and then place black top over the potholes in need of repair[.]" *Id.* at 43-44, 47. Because it cannot be said that the condition of North Street at the time of Hickman's fall was the result of a policy decision to leave certain streets unrepaired, the City is not entitled to discretionary-function immunity.[1]

[11] This case is distinguishable from two sidewalk-repair cases that the City relies upon heavily: *City of Indianapolis v. Duffitt*, 929 N.E.2d 231 (Ind. Ct. App. 2010), and *City of Terre Haute v. Pairsh*, 883 N.E.2d 1203 (Ind. Ct. App. 2008), *trans. denied*. In both of those cases, the cities presented evidence that they had made

---

[1] The City notes that its street employees necessarily exercise some level of discretion in deciding when and how to patch particular potholes, *see* Appellee's Br. p. 8, but it does not argue that these are the sort of "policy decisions" entitled to discretionary-function immunity. As the City itself notes, "[t]he crucial question is not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations." *Id.* at 14 (citing *Peavler*, 528 N.E.2d at 45).

policy decisions that certain sidewalks would not be repaired until others were repaired. Again, the City made no such decision in this case.

[12] Reversed.

Bradford, J., and Brown, J., concur.