

IN THE

# Court of Appeals of Indiana

John H. Murphy,

*Appellant-Plaintiff*

v.

The City of South Bend,

*Appellee-Defendant*



FILED

Jun 26 2026, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

June 26, 2026

Court of Appeals Case No.
26A-CT-94

Appeal from the St. Joseph Circuit Court

The Honorable Jenny Pitts Manier, Special Judge

Trial Court Cause No.
71C01-2406-CT-000324

**Opinion by Judge Felix**
Judges Weissmann and DeBoer concur.

**Felix, Judge**

## Statement of the Case

[1] While walking in a parade in South Bend, Indiana, John Murphy fell, injuring his leg. Murphy sued the City of South Bend (the "City"), claiming that a pothole caused him to fall and therefore the City is liable for negligently maintaining its roads. In a motion for summary judgment, the City asserted it was immune from liability for Murphy's injuries pursuant to Indiana Code section 34-13-3-3(a)(7), which grants a governmental entity immunity for the performance of a discretionary function. The trial court agreed that the City's road maintenance decisions fell under Section 34-13-3-3(a)(7), so it granted the City summary judgment on that basis. Murphy presents one issue on appeal: Whether the trial court erred by granting summary judgment in favor of the City on its immunity defense.

[2] Because we conclude the City failed to designate sufficient evidence to prove it is entitled to immunity, we reverse and remand.

## Facts and Procedural History

[3] On March 16, 2024, a St. Patrick's Day Parade was held in the City. The City owns the streets on which the parade occurred. Murphy, who was in a group near the end of the procession, walked in the parade. While walking along East Jefferson Boulevard near St. Louis Boulevard, Murphy claims he stepped in a "pothole," fell, and injured his leg. Appellant's App. Vol. II at 55.

[4] Within 180 days of his fall, Murphy filed a tort claim notice. Thereafter, Murphy filed a complaint against the City, alleging it had "carelessly and negligently breached" its duty to "keep its streets and sidewalks, including East Jefferson Boulevard, in reasonably safe condition for travel." Appellant's App. Vol. II at 22; Appellee's App. Vol. II at 2.

[5] The City filed a motion for summary judgment, arguing in relevant part that it was immune from liability for Murphy's injuries pursuant to Indiana Code section 34-13-3-3(a)(7).[1] That statute provides in relevant part that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the . . . performance of a discretionary function." Ind. Code § 34-13-3-3(a)(7).[2]

[6] In support of its immunity defense, the City argued that street maintenance is a discretionary function and designated statements from two City employees: (1) two affidavits plus excerpts from a deposition of Thomas Whitaker, the Streets Manager for the City's Department of Public Works; and (2) an affidavit from

---

[1] The City also argued it was entitled to summary judgment because (1) it owed no duty to Murphy based on lack of notice and opportunity to repair the pothole, and (2) Murphy was contributorily negligent. The trial court denied the City summary judgment on those claims, and the City does not appeal that denial.

[2] Section 34-13-3-3 has been amended several times recently. *See* 2023 Ind. Acts 1370–74, 2023 Ind. Legis. Serv. P.L. 135-2023 § 1 (West) (adding Subsection (a)(17)(C)—immunity related to a person or property under supervision of a governmental entity; effective July 1, 2023); 2025 Ind. Acts 2314–17, 2025 Ind. Legis. Serv. P.L. 186-2025 § 182 (West) (amending cross-reference in Subsection (a)(7); effective July 1, 2025). On July 1, 2026, yet another amendment will take effect. 2026 Ind. Legis. Serv. P.L. 94-2026 § 3 (West) (adding Subsection (a)(25)—immunity related to "Indiana civilian cyber corps program deployment"). None of these amendments have substantively changed Subsection (a)(7). *See id.*; 2025 Ind. Acts 2314; 2023 Ind. Acts 1371. For clarity and concision, an effective date parenthetical will not be included after any reference to Section 34-13-3-3(a)(7).

Eric Horvath, the Executive Director of the City's Department of Public Works.[3]

[7] Whitaker explained that the Department of Public Works "maintains 1,276 travel lane miles of street" and is responsible for "overall street . . . maintenance." Appellant's App. Vol. II at 45. According to Whitaker, "[t]he City does not have enough money to perform all needed street repairs at the same time." *Id.*; *see also* Appellant's App. Vol. III at 31–32. Horvath similarly stated that "the City d[id] not have the money to do all needed street repairs at one time in 2024," and that in June 2025, it would cost "approximately 123.9 million dollars" to "do all needed street repairs at the same time." Appellant's App. Vol. III at 40. Both Whitaker and Horvath asserted that because of the budget constraints, the City "uses a deliberative, policy-driven process to inspect and repair its streets while working to consciously balance current conditions and budgetary restraints." Appellant's App. Vol. II at 45; Appellant's App. Vol. III at 40; *see also* Appellant's App. Vol. III at 31–32. Horvath further stated, "Our budgetary goal, subject to Council and Redevelopment Commission appropriations, is to complete approximately 10 million dollars of street repairs a year." Appellant's App. Vol. III at 40.

[8] Whitaker further testified that in 2021, the "Department of Public Works created a 10-year improvement plan called the 'Rebuilding Our Streets Plan' . . .

---

[3] Murphy filed a motion to strike Horvath's affidavit, and the trial court denied that motion. Murphy does not challenge that ruling on appeal or otherwise argue that we should not consider Horvath's affidavit.

for the City" that "laid out short-term (three-year) and long-term (ten-year) goals to repair and improve the City's streets." Appellant's App. Vol. II at 46. Since 2023, the City has used "a street asset management software . . . to analyze the condition of city streets and assign a Pavement Condition Index ('PCI') rating, . . . which rates street conditions from 0 to 100." *Id.* Every two years beginning in 2023, "100% of all City streets are driven . . . by vehicles equipped with cameras that provide the City with the PCI rating." *Id.* The City uses the software's analysis and the PCI rating "to determine which street resurfacing projects to prioritize each year. The results are compiled and then, based on the PCI rating and according to the Plan, streets are added to the paving schedule, either in the current year or subsequent years." *Id.* "Street paving generally begins on April 1st of every year and runs until the fall, depending on the weather." *Id.*

[9] According to Whitaker, aside from Rebuilding Our Streets Plan-related repairs, "[t]he City has a separate process for responding to complaints about individual potholes." Appellant's App. Vol. II at 46. The City "receives the complaints and someone prepares a work order to send a crew to patch the pothole," *id.*, or potholes are patched as part of routine inspections and "pothole repairs sweeps," *id.* at 47. As to the latter, "Streets Division employees [drive] the City streets every day and are instructed to fill any pothole they see." *Id.* Pothole repairs can generally be done year-round, but the weather typically dictates the materials used.

[10] Whitaker asserted that the portion of East Jefferson Boulevard on which the parade occurred "did not have a PCI . . . rating sufficient to warrant street resurfacing under the City's plan" at the time of the parade, so it was "repaired on an as[-]needed basis, pursuant to the City's process for pothole repairs." Appellant's App. Vol. II at 47. Similarly, Horvath testified that East Jefferson Boulevard was "scheduled to be resurfaced in 2025" pursuant to the Rebuilding Our Streets Plan. Appellant's App. Vol. III at 41.

[11] In opposition to the City's summary judgment motion, Murphy argued that street maintenance is an operational function and designated one of Whitaker's affidavits plus an excerpt from Whitaker's deposition. Specifically, Murphy relied on Whitaker's statements regarding (1) the City's inability to "perform all needed street repairs at the same time" and its use of "a deliberative, policy-driven process . . . to consciously balance current conditions and budgetary restraints," Appellant's App. Vol. II at 45; (2) the City's practice of having "Streets Division employees [drive] the City streets every day" to fill potholes, *id.* at 47; and (3) Whitaker's lack of personal knowledge of the City's budget for street repairs, *id.* at 143.

[12] The trial court granted summary judgment in favor of the City, determining it was entitled to discretionary function immunity. This appeal ensued.[4]

---

[4] On June 4, 2026, we held oral argument at the Indiana State Bar Association's Solo & Small Firm Conference held at French Lick Resort in French Lick, Indiana. We thank all those in attendance for their attentiveness and hospitality, and we thank counsel for all parties for the quality of their advocacy.

## Discussion and Decision

### The Trial Court Erred by Granting Summary Judgment in Favor of the City on Its Discretionary Function Immunity Defense

[13] Murphy challenges the trial court's decision to grant summary judgment in favor of the City. We review summary judgment decisions de novo, *Gierek v. Anonymous 1*, 250 N.E.3d 378, 384 (Ind. 2025) (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)), which means we apply the same standard as the trial court, *Wohlt v. Wohlt*, 245 N.E.3d 611, 615 (Ind. 2024) (citing *Red Lobster Rests. LLC v. Fricke*, 234 N.E.3d 159, 165 (Ind. 2024)). Summary judgment is proper only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Abbott v. State*, 183 N.E.3d 1074, 1079 (Ind. 2022) (quoting *Hughley*, 15 N.E.3d at 1003).

[14] We resolve "[a]ll factual inferences and all doubts as to the existence of a material issue" in favor of the nonmovant. *Zaragoza v. Wexford of Ind., LLC*, 225 N.E.3d 146, 151 (Ind. 2024) (internal quotation marks omitted) (quoting *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012)). In so doing, "we give careful scrutiny to make sure the non-movant's day in court is not improperly denied." *Id.*

(internal quotation marks omitted) (quoting *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016)).

[15] "The party moving for summary judgment bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Abbott*, 183 N.E.3d at 1079 (emphasis in original) (citing *Sargent v. State*, 27 N.E.3d 729, 731 (Ind. 2015)). Only if the movant meets this prima facie burden does the burden then shift to the nonmovant to "come forward with contrary evidence showing an issue for the trier of fact." *Abbott*, 183 N.E.3d at 1079 (citing *Hughley*, 15 N.E.3d at 1003).

[16] Here, the City filed a motion for and was granted summary judgment based on its discretionary function immunity defense. Pursuant to the Indiana Tort Claims Act, "governmental entities can be subject to liability for tortious conduct unless the conduct is within an immunity granted by" Indiana Code section 34-13-3-3.[5] *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 138 (Ind. 2016) (quoting *Veolia Water Indianapolis, LLC v. Nat'l Tr. Ins. Co.*, 3 N.E.3d 1, 5 (Ind.), *on reh'g*, 12 N.E.3d 240 (Ind. 2014) (mem.)). As relevant here, Indiana Code section 34-13-3-3(a)(7) provides in pertinent part that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the . . . performance of a discretionary function."

---

[5] "Immunity assumes negligence but denies liability," so "the issues of duty, breach[,] and causation are not before the court in deciding whether the government entity is immune." *Peavler v. Bd. Comm'rs Monroe Cnty.*, 528 N.E.2d 40, 46 (Ind. 1988).

[17] The entity seeking immunity has the burden of demonstrating that "the challenged act or omission was a policy decision made by consciously balancing risks and benefits." *Beloat*, 50 N.E.3d at 138 (quoting *Peavler v. Bd. Comm'rs Monroe Cnty.*, 528 N.E.2d 40, 46 (Ind. 1988)). Importantly, our Supreme Court "has cautioned that 'discretionary immunity must be narrowly construed because it is an exception to the general rule of liability.'" *Id.* (alteration omitted) (quoting *Peavler*, 528 N.E.2d at 46).

[18] Indiana uses the "planning/operational test" for addressing discretionary function immunity claims. *Beloat*, 50 N.E.3d at 138 (quoting *Peavler*, 528 N.E.2d at 46). "[P]lanning functions are discretionary and thus shielded by immunity, whereas operational functions are not." *Jurich v. Ind. Dep't Transp.*, 126 N.E.3d 846, 856 (Ind. Ct. App. 2019) (quoting *Lee ex rel. Estes v. Bartholomew Consol. Sch. Corp.*, 75 N.E.3d 518, 526 (Ind. Ct. App. 2017)), *trans. denied*. "Planning activities include acts or omissions 'in the exercise of a legislative, judicial, or executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy.'" *Beloat*, 50 N.E.3d at 138 (quoting *Peavler*, 528 N.E.2d at 45). "Government decisions about policy formation which involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources are also planning activities." *Peavler*, 528 N.E.2d at 45 (citing *Indus. Indem. Co. v. State*, 669 P.2d 561, 564–65 (Alaska 1983)). However, a government employee's or contractor's exercise of "professional judgment, without more, is

not equivalent to the formulation of basic policy." *Ind. Dep't Transp. v. Sadler*, 33 N.E.3d 1187, 1194 (Ind. Ct. App. 2015) (quoting *Greathouse v. Armstrong*, 616 N.E.2d 364, 368 (Ind. 1993)); *see also Peavler*, 528 N.E.2d at 47.

[19] The planning/operational test "insulate[s] only those significant policy and political decisions which cannot be assessed by customary tort standards." *Beloat*, 50 N.E.3d at 138 (quoting *Peavler*, 528 N.E.2d at 45). "Labeling an action as planning or operational, without more, is insufficient to determine whether immunity exists." *Id.* (citing *Peavler*, 528 N.E.2d at 45). Courts "close[ly] consider[]" (1) "the nature of the governmental actions and the decision-making process that was involved," *id.* (citing *Peavler*, 528 N.E.2d at 45); (2) "whether the action is one that was intended to be immune," *id.* (citing *Peavler*, 528 N.E.2d at 46); and (3) whether the purposes of immunity "would be furthered by extending immunity to the act in question," *id.* (quoting *Peavler*, 528 N.E.2d at 46). Factors that typically point toward immunity include the following:

    1. The nature of the conduct—

        a) Whether the conduct has a regulatory objective;

        b) Whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard;

        c) Whether the conduct requires a judgment based on policy decisions;

d)  Whether the decision involved adopting general principles or only applying them;

e)  Whether the conduct involved establishment of plans, specifications and schedule; and

f)  Whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources.

2.  The effect on governmental operations—

a)  Whether the decision affects the feasibility or practicability of a government program; and

b)  Whether liability will affect the effective administration of the function in question.

3.  The capacity of the court to evaluate the propriety of the government's action—

Whether tort standards offer an insufficient evaluation of the plaintiff's claim.

*Peavler*, 528 N.E.2d at 46.  These factors (the "*Peavler* Factors") "are not determinative" and may not be "applicable to every set of facts that may arise." *Beloat*, 50 N.E.3d at 138 n.1.

[20]  Discretionary function immunity has typically come to Indiana's appellate courts on summary judgment rulings.  Governmental entities have often struggled with meeting their burden of proving the allegedly negligent conduct

was "a policy decision made by consciously balancing risks and benefits," *Peavler*, 528 N.E.2d at 46 (citing *Little v. Wimmer*, 739 P.2d 564 (Or. 1987); *Johnson v. State*, 447 P.2d 352, 361 n.8 (Cal. 1968)). For example, in *Peavler v. Board of Commissioners of Monroe County*,[6] citizens of Steuben County sued their Board of Commissioners for allegedly negligently failing to place traffic control devices warning motorists of a "T" intersection. 528 N.E.2d at 41, 47. Steuben County filed a motion for summary judgment, asserting a decision to place a warning sign is a discretionary function, thereby making the county "immune from any liability arising from a failure to place a warning sign." *Id.* at 47. In support, Steuben County designated the complaint and answer as well as the parties' interrogatories. *Id.* at 48. The trial court denied Steuben County's motion. *Id.* at 41.

[21] Chief Justice Randall T. Shepard, writing for a 4–1 majority of the Indiana Supreme Court, affirmed the trial court's denial, concluding that Steuben County failed to present "evidence to show that its decision regarding the warning signs was the result of" a policy decision, that is, a conscious balancing of risks and benefits. *Id.* at 47–48. Chief Justice Shepard specifically noted the following evidentiary failures in Steuben County's summary judgment motion:

---

[6] *Peavler v. Board of Commissioners of Monroe County* disposed of two cases concerning discretionary function immunity and traffic control devices: one out of Monroe County and one out of Steuben County. 528 N.E.2d at 41. The Monroe County case was tried to a jury, and the Indiana Supreme Court reversed the jury's verdict because of an erroneous jury instruction regarding the county's duty to post warning signs. *Id.* at 48.

> The county did not present evidence that the "T" intersection had been considered by the board of commissioners or that i[t] was part of a policy process in which elected officials played a key role. It did not introduce minutes of board meetings where the need for a warning sign was rejected or present testimony of commissioners regarding the decision-making process involved. It did not introduce a comprehensive ordinance, studies or surveys of the area in question which showed that this area had been evaluated and a warning sign had been deemed unnecessary.

*Id.* at 48. In other words, Steuben County "presented no evidence from which [a reviewing court could] evaluate the nature of the board's conduct in failing to erect a warning sign, the potential effect of liability on county operations, or the capacity of the court to judge the county's action." *Id.* The *Peavler* majority could thus not determine "whether the failure to erect a warning sign arose from a judgment based on policy considerations." *Id.*

[22] Since *Peavler*, determining whether a governmental entity is entitled to discretionary immunity and thus summary judgment has resulted in close—and sometimes disputed—calls. In *City of Terre Haute v. Pairsh*, Annette Pairsh was injured after tripping and falling on a damaged area of sidewalk in Terre Haute, so she sued the city for negligently failing to repair the sidewalk. 883 N.E.2d 1203, 1204–05 (Ind. Ct. App. 2008), *trans. denied*. In support of its immunity-based summary judgment motion, Terre Haute designated an affidavit from its Transportation Infrastructure Manager. *Id.* at 1205. The Manager averred that (1) Terre Haute "has limited funds to make repairs to sidewalks," (2) he had been assigned the responsibility of prioritizing sidewalk repairs based on

inspections and a cost-benefit analysis, (3) he had determined the sidewalk that Pairsh tripped on "did not constitute an immediate hazard to pedestrians warranting immediate reconstruction and repair," and (4) he had determined "there were other sidewalks that should be repaired" first. *Id.* at 1205–06. The trial court denied Terre Haute's summary judgment motion, *Pairsh*, 883 N.E.2d at 1206, and a majority of this court reversed, *id.* at 1208.

[23] Judge May dissented and would have affirmed the trial court's denial. *Pairsh*, 883 N.E.2d at 1208–11 (May, J., dissenting). Judge May specifically took issue with the reliance on the Manager's affidavit. *Id.* at 1209.

> Boards and commissions speak or act officially only through the minutes and records made at duly organized meetings. The public policy decisions that are entitled to discretionary function immunity must have been made by the governmental entity in its official capacity. Unless the government entity submits minutes of meetings, a trial court cannot conclude the entity is entitled to immunity based on the exercise of its official judgment.

*Id.* (internal citations omitted) (citing *Scott v. City of Seymour*, 659 N.E.2d 585, 588 (Ind. Ct. App. 1995)). Judge May believed the Manager's affidavit did "not evidence official action." *Id.* at 1210.

[24] In *City of Beech Grove v. Beloat*, Cathy Beloat was injured after stepping into a hole while crossing Main Street, so she sued the City of Beech Grove for negligently failing to maintain it. 50 N.E.3d at 136–37. In support of its immunity-based summary judgment motion, Beech Grove designated an affidavit from its mayor and minutes from meetings of the City Council and the

Board of Works and Safety. *Id.* at 140. This evidence demonstrated that Beech Grove had developed a plan to completely reconstruct Main Street, necessary funding had been approved, and a timeline had been discussed. *Id.* at 140–42. The trial court denied Beech Grove's motion.

[25] A unanimous Indiana Supreme Court affirmed that denial. *Beloat*, 50 N.E.3d at 143. As a preliminary matter, the *Beloat* court concluded "the Mayor's affidavit cannot be solely relied upon to demonstrate that [Beech Grove] engaged in a policy determination." *Id.* at 140. It is well-settled that "public policy decisions committed to a board or commission and entitled to discretionary immunity must be made in public in the manner provided by law," *id.* (alteration omitted) (quoting *Scott*, 659 N.E.2d at 591), so "the actions of individual members of a board or commission outside a meeting cannot be substituted for the actions at a duly constituted meeting or for the minutes thereof," *id.* (alteration omitted) (quoting *Scott*, 659 N.E.2d at 590). Accordingly, although Beech Grove's mayor "served as the presiding officer over the City Council, . . . his comments and actions alone are not actions of the board itself, as he only serves as an individual member on that board." *Id.* Furthermore, "nothing in the record indicate[d] that the Mayor had been delegated individual authority to weigh the cost and benefits of road repairs and make an independent policy decision regarding whether certain repairs should be made over others."[7] *Id.* at 140–41.

---

[7] Because Beech Grove "ma[d]e no claim that the Mayor was delegated an independent policy-making role," the *Beloat* court chose not to resolve this court's split regarding "whether an individual who has been

[26]     Turning to the designated meeting minutes, the *Beloat* court concluded they failed to reflect "any discussion about how the area encompassed within the Project was decided upon, why specific repairs were selected over others, what would be done about road damage in the meantime, why total reconstruction was necessary, or the costs of total reconstruction compared to conducting other individual repairs." *Beloat*, 50 N.E.3d at 142. The designated evidence established only "the steps taken to fund a project that had already been discussed, planned, and approved," which, without more, did not demonstrate that Beech Grove "had in fact engaged in a policy-oriented decision[-]making process." *Id.* The *Beloat* court reasoned that although Beech Grove "did not need to demonstrate that it considered whether it should fill the specific hole that was alleged to have caused Beloat's injuries, it did have to make some showing that the Main Street Project was implemented *instead of* general road repairs, such as filling pot holes, and that the costs and benefits of this decision were weighed." *Id.* at 142–43 (emphasis added).

delegated policy-making powers can constitute 'official action' for purposes of immunity." *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 140 n.3 (Ind. 2016) (acknowledging Judge May's dissent in *City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1209–11 (Ind. Ct. App. 2008) (May, J., dissenting)). We note, however, that the Indiana Supreme Court stated in *Peavler* that "a county's considered decision to entrust placement of traffic control devices to a traffic engineer is not reviewable under tort standards, while the engineer's subsequent decisions as to warning signs are reviewable under tort standards of professional negligence." 528 N.E.2d at 47 (citing *Driscoll v. United States*, 525 F.2d 136 (9th Cir. 1975)); *see also Ind. Dep't Transp. v. Sadler*, 33 N.E.3d 1187, 1194–95 (Ind. Ct. App. 2015) (explaining a government employee's or contractor's exercise of discretion in *implementing* policy "does not equate to the level of executive judgments that should be afforded protection under the governmental immunity doctrine"). Regardless, like the *Beloat* court, we need not decide this issue to resolve this case.

[27] This court has continued to split on what evidence is sufficient to establish discretionary function immunity. Several years after *Beloat*, this court decided *Johnson v. City of Michigan City*, 172 N.E.3d 355 (Ind. Ct. App.), *trans. granted*, *opinion vacated*, 173 N.E.3d 1024 (Ind. 2021), *trans. denied*, *opinion reinstated*, 178 N.E.3d 1198 (Ind. 2022) (mem.). There, Laura Johnson was injured when she struck a pothole while riding her bike on a Michigan City street. *Id.* at 357. Johnson sued Michigan City for negligently maintaining the road. *Id.* at 358. In support of its immunity-based summary judgment motion, Michigan City designated evidence demonstrating that (1) it "does not have enough money to perform all needed repairs at the same time"; (2) the City Engineer sets street repair priorities based on rating system scores, inspections, and citizen complaints concerning street conditions; (3) it "has a separate process for responding to complaints about individual potholes"; (4) the City Engineer was in the process of soliciting bids to resurface the street when Johnson's accident occurred; and (5) in response to complaints about the street's potholes, the City Engineer indicated it would be resurfaced soon. *Id.* at 357. The trial court granted summary judgment in favor of Michigan City on its immunity defense, and a majority of this court affirmed. *Johnson*, 172 N.E.3d at 356.

[28] Judge Brown dissented and would have reversed the trial court's grant. *Johnson*, 172 N.E.3d at 360–61 (Brown, J., dissenting). Judge Brown focused on Johnson's designated evidence, which showed that (1) if there was "a 'pothole in existence that was a hazard,'" Michigan City's Street Director "would have addressed the problem and asphalted the pothole"; and (2)

"sealing the cracks would have taken place before resurfacing and was not connected with resurfacing." *Id.* at 360. Michigan City also "point[ed] only to [its City Engineer]'s deposition in its memorandum of support of summary judgment." *Id.* at 361. Based on this evidence, Judge Brown concluded that Michigan City had "failed to designate evidence that a decision to fill a pothole which poses a dangerous condition is a deliberative, policy-driven process, or that this process was entirely a planning function rather than an operational function." *Id.* at 360 (citing *Beloat*, 50 N.E.3d at 138). "[T]he fact [Michigan] City made a decision to repave the entire [street Johnson wrecked on] does not mean that filling identified, dangerous potholes of which [Michigan] City had actual knowledge was not an operational function." *Id.* at 361.

[29] We agree with Judge Brown's dissent in *Johnson*. Assuming arguendo that the Rebuilding Our Streets Plan was the result of a governmental entity's policy-oriented decision-making process,[8] there is nothing in the record demonstrating that the Department of Public Works's pothole repair process is part of that plan. In fact, pothole repair is "a separate process." Appellant's App. Vol. II at

---

[8] Whitaker averred that "the *Department of Public Works* created . . . the 'Rebuilding Our Streets Plan' . . . for the City." Appellant's App. Vol. II at 46 (emphasis added). However, the Department of Public Works is likely not a "governmental entity" as that term is used in Indiana Code section 34-13-3-3(a)(7). A "governmental entity" is "the state or a political subdivision of the state," Ind. Code § 34-6-2.1-77(a), the latter of which includes, among other things, a county, township, city, town, separate municipal corporation, or a board or commission of the aforementioned entities, *id.* § 34-6-2.1-155(1)–(5), (10). Accordingly, the City or one of its boards or commissions would have had to (1) delegate to the Department of Public Works the independent policy-making power to create and enact the Rebuilding Our Streets Plan, *see Beloat*, 50 N.E.3d at 140–41; *Pairsh*, 883 N.E.2d at 1208–11 (May, J., dissenting); or (2) consider and approve the Rebuilding Our Streets Plan as part of a policy process, *see Beloat*, 50 N.E.3d at 138 (quoting *Peavler*, 528 N.E.2d at 45). There is no evidence in the record that such delegation or approval occurred.

46. The City's designated evidence also shows that when a street such as East Jefferson Boulevard was "slated for repaving," the Department of Public Works "repaired on an as[-]needed basis, pursuant to the City's process for pothole repairs." *Id.* at 47. Considering the evidence in the light most favorable to Murphy as the nonmovant, we cannot say the pothole repair process is part of the Rebuilding Our Streets Plan.

[30] As in *Peavler* and *Beloat*, there are significant evidentiary gaps here. We do not know how and why the decision was made to both respond to citizen complaints and conduct regular "pothole repairs sweeps," Appellant's App. Vol. II at 47. *See Peavler*, 528 N.E.2d at 46. We do not know what, if any, plans, specifications, or schedules might have been chosen in formulating the pothole repair process. *See id.* We do not know if any factors were balanced, if any priorities were assessed, or if any budgets were considered when choosing the as-needed approach. *See id.* We do not know to what extent, if any, the pothole repair process was scaled back or suspended once a street was set for repaving. We also do not know if Horvath, Whitaker, or anyone else was delegated independent policy-making powers regarding the pothole repair process. *See supra* ¶ 25 n.7. All we do know is that generally, if the Department of Public Works is notified of or one of its crews observes a pothole, the pothole is fixed. Thus, there is insufficient evidence for us to determine what *Peavler* Factors, if any, may exist in this case. Considering the evidence in the light most favorable to Murphy as the nonmovant, we cannot say the pothole repair

process was the result of a governmental entity's policy-oriented decision-making process.

[31] In short, the City presented no evidence from which we can evaluate the nature of its conduct in failing to repair potholes, the potential effect of liability on the City's operations, or the capacity of the court to judge the City's action. We cannot determine from this record whether the failure to repair a pothole arose from a governmental entity's judgment based on policy considerations. Because the City cannot show that it is entitled to discretionary function immunity, it cannot establish that it is entitled to judgment as a matter of law such that summary judgment would be appropriate. The trial court therefore erred by granting the City's summary judgment motion on that basis.[9]

## Conclusion

[32] In sum, the trial court erred by granting summary judgment in favor of the City on its discretionary function immunity defense. We reverse that decision and remand for further proceedings not inconsistent with this opinion.

[33] Reversed and remanded.

---

[9] Our conclusion that the City *has not shown* it is immune from liability for Murphy's negligence claim should not be read to mean the City *is not* immune. If on remand the City can present evidence that it engaged in a policy-oriented decision-making process regarding pothole repair, the courts will not second-guess that policy judgment.

Weissmann, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Edward J. Chester
Laura L. Ezzell
J. Thomas Vetne
Chester Law Office
Elkhart, Indiana

ATTORNEY FOR APPELLEE

Elizabeth A. Klesmith
THK Law, LLP
South Bend, Indiana